**LEAGUE GENERAL INSURANCE COMPANY, Appellant,**

v.

**Richard N. TVEDT, et al., Defendants,**

and

**Ronald Dozier, et al., Respondents.**

No. 81–911.

Supreme Court of Minnesota.

March 19, 1982.

Lommen, Nelson, Sullivan & Cole, Minneapolis, for appellant.

Blackmar & Rehm, Burnsville, for Dozier, et al.

PETERSON, Justice.

This appeal arises out of a declaratory judgment action brought by plaintiff, League General Insurance Company, to determine its liability for injuries caused by Steven P. Tvedt, the son of its insured, Richard N. Tvedt, to defendant Ronald Dozier. The question presented in whether optional coverages should be read into the Tvedt policy by operation of law on the ground that League General failed to make a mandatory offer of optional coverages as required under Minn.Stat. § 65B.49, subd. 6 (1978) (repealed 1980).

Dozier sustained personal injury and property damage on January 6, 1980, when his automobile collided with an automobile owned by Tvedt and driven by his son Steven. At the time of the accident, Tvedt carried basic compulsory coverage on the involved vehicle with League General. As mandated by the no-fault act, the basic coverage contained limits of $25,000 per person/$50,000 per occurrence for bodily in-

jury and $10,000 for property damage. Minn.Stat. § 65B.49, subd. 3(1) (1980).

A lawsuit by Ronald Dozier and Ruth Dozier against the Tvedts resulted in a stipulation causing League General to pay to the Doziers the $25,000 policy limit for bodily injury and releasing the Tvedts from further liability. In return, the Tvedts assigned to the Doziers any additional residual liability coverage which League General may be required to extend on behalf of the Tvedts.

To determine whether any additional liability coverage would be imposed, the parties to the stipulation agreed to the present action for declaratory judgment. On July 1, 1981, summary judgment was entered in favor of the Doziers and the Tvedts, finding that residual liability coverage did exist by virtue of League General's failure to comply with the "mandatory offer" provision of Minn.Stat. § 65B.49, subd. 6 (1978) (repealed 1980). League General appeals, and we reverse.

■ The insurer carries the burden of proving that it did make the mandatory offer of coverages to its insured. *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244, 248 (Minn.1980). The record before us demonstrates that the burden has been met.

■ In 1978, when the Tvedt policy was due for renewal, League General mailed material to Tvedt explaining aspects of split limit coverage and discussing optional supplemental coverages that could be purchased. These materials included a brochure entitled "No-Fault Auto Insurance," which states that League General had optional policies providing more than the statutorily required liability coverage. A chart setting forth the optional limits [1] is followed by this explanation of the importance of liability coverage:

If you are at fault in an auto accident, there are some circumstances where you may be held liable: .

1. An accident occurring outside of Minnesota.
2. If a person dies, is permanently injured or disfigured, is disabled for 60 days or more or incurs more than $2,000 of medical expenses due to an accident that happens in Minnesota.
3. Damage to property of others due to an accident in Minnesota or elsewhere.

As a result, Minnesota's No-Fault law requires you to have Liability insurance.

Each of the options available contains three different maximum amounts of protection in case you or someone in your family is sued because of an auto accident. For example, the first option listed provides up to $25,000 protection if one person is injured in an auto accident and up to a total of $50,000 protection if more than one person is injured. In case of damage to another vehicle or property, the maximum property damage protection is $10,000. This is the minimum amount of liability insurance permitted by Minnesota law.

*We suggest you seriously consider the other options because they provide substantially more protection, with only a small increase in your premium. (Think of the number of cars, campers and other vehicles that cost more than $10,000. In addition, courts continue to increase the sums of money awarded to victims of auto accidents.)*

Liability insurance also covers you and any other relatives in your household while driving a non-owned passenger car with owner's permission.

(emphasis added).

The mailing also contained an "Important Notice" stating that an insured's "split limits" coverage "will adequately cover most situations where you may be found legally liable if you were involved in an automobile accident, [but] you may want to purchase higher limits. If you want a quotation for

---

1. The chart carries the information that liability coverage is required by Minnesota law and serves to protect "you and your family against your liability for injury to others or damage to their property." The chart displays three distinct coverage packages: $25,000 per person/$50,000 per occurrence for bodily injury with $10,000 for property damage, $50,000/$100,000 for bodily injury with $50,000 for property damage, and $100,000/$300,000 for bodily injury with $50,000 for property damage.

some other limit of liability, complete the enclosed postage paid card and send it to us."

The postage paid card displays the following declaration: "YES! I would like to know the cost of the liability package if I change the limits (as indicated below) on my League General Automobile Insurance Policy." Below this statement is a column of four boxes used to indicate a desired liability package. Three of the boxes are matched with the same liability packages mentioned in the brochure.[2] The fourth option offers coverage of $300,000 per person and per occurrence for bodily injury with $50,000 for property damage, but was available only to policyholders who already had $300,000 per occurrence coverage. The insured was asked to fill in his policy number and telephone number and sign the card before mailing.

Tvedt admits that he received this mailing. He renewed his policy on October 14, 1978, purchasing the minimum liability coverage. The same coverage was again purchased in 1979 and was in effect at the time of the accident.

Minn.Stat. § 65B.49, subd. 6 (1978) (repealed 1980), required that insurers "shall offer" various optional coverages detailed in that subdivision. The Doziers argue that this language required something more than giving an insured notice of the availability of optional coverages. They assert that specific information relating to premium rates, coverage terms, and duration of the policy must have been communicated to the insured. Our earlier cases will not support this interpretation.

*Jacobson v. Illinois Farmers Insurance Co.,* 264 N.W.2d 804 (Minn.1978), arose under a predecessor statute requiring only that optional coverages be "made available." In *Jacobson,* a mailing insert sent to all policyholders explained the availability and operation of optional underinsured motorist coverage. *Id.* at 805. We held that

mailing inserts were a "commercially reasonable" means of making available the optional coverage, noting that the procedure was considered "trustworthy" and made the coverage "adequately visible." *Id.* at 808.

In *Holman v. All Nation Insurance Co.,* 288 N.W.2d 244 (Minn.1980), the issue of mandatory offers arose under the statutory language "shall offer." The insurance agent in that case had not explained or discussed any of the optional coverages in more than general terms, believing that All Nation would not provide coverage beyond the minimum requirements for "high risk" insureds, such as Holman. *Id.* at 247. Our finding in *Holman* that no offer of optional coverages was made is distinguishable on the facts from the present action.[3]

The *Holman* decision takes notice of the change in statutory language from "made available" to "shall offer." *Id.* at 248 n.2. We did not interpret the statutory change as expanding the positive obligation recognized in *Jacobson.* Instead, we said that the change made the *Jacobson* holding "more tenable." *Id.* The *Holman* decision restates the obligation as requiring insurers to "make their insureds aware of the availability of the optional coverages." *Id.*

In response to All Nation's argument that its obligation was removed by Holman's expressed desire to "spend as little as possible," we noted that the insurance agent "never told Lawrence Holman what specific amounts of optional coverages were available for what specific premium prices. Even an insurance customer who asks for the minimum coverage might decide to buy additional coverage if told that the additional protection could be had at a minimal cost." *Id.* at 250. Our concern in this dictum was that the insured was never given enough information to make an intelligent decision about optional coverages. That concern is satisfied in the present case, even without information on specific premium rates, by the explanatory material in League Gener-

2. See note 1 *supra.*

3. *Holman* examined the sufficiency of an oral insurance sales negotiation. After Holman expressed interest in the lowest possible premium, the insurance agent discussed neither the coverage limits on optional policies nor the reasons why Holman might consider additional coverage. Nor was any indication given that the incremental cost of additional coverage would be relatively small.

al's brochure, the listing of optional coverage limits, and the admonition in the brochure, which reads: "We suggest you seriously consider the other options because they provide substantially more protection, *with only a small increase in your premium.*" (emphasis added).

*Kuchenmeister v. Illinois Farmers Insurance Co.,* 310 N.W.2d 86 (Minn.1981), is our most recent decision involving mandatory offers. In *Kuchenmeister,* a premium renewal notice was mailed to the insured with language appearing at the bottom of the notice stating, "Did you know that you may now have underinsured motorist and/or uninsured motorist coverage in amounts up to your bodily injury liability limits. If interested, contact your agent." *Id.* at 88. We held that this communication was not sufficient to effect compliance with the statutory requirement that the insurer "shall offer" the optional coverage.

Significantly, the *Kuchenmeister* holding was not based upon the absence of specific premium rates from the communication. Rather, we reasoned as follows:

> The message printed on the bottom of the notice was, at best, vague. It gave no explanation of underinsured motorist coverage and how it differed from uninsured coverage. Respondent, in the instant case, stated that he only glanced over the message. Thinking it related to uninsured motorist coverage, a coverage included in his policy, he did not carefully scrutinize it. Perhaps in the broadest sense the message constituted an offer. It is, however, far from being a meaningful offer.

*Id.* None of these failings is present in the brochure, explanatory letter, and postage paid card sent by League General in this case.

The word "offer," used as a verb or noun in the context of contract law, refers to conduct which has a certain legal effect—it empowers the offeree to create a contract by his or her acceptance. Respondents argue that League General did not "offer" optional coverages because Tvedt could not have created a contract of insurance by his acceptance. This position is contrary to the usual understanding in insurance law that an application for insurance constitutes the offer. A completed contract does not arise until the application is accepted by the insurer and all conditions precedent to be performed are complied with. *Rasmussen v. Prudential Insurance Co.,* 277 Minn. 266, 152 N.W.2d 359 (1967).

We conclude that the evidence establishes an adequate offer of residual liability coverage under section 65B.49, subd. 6, and accordingly reverse.

Reversed.