Richard A. HASTINGS, Respondent,

v.

UNITED PACIFIC INSURANCE COMPANY, Appellant.

No. 81–774.

Supreme Court of Minnesota.

May 7, 1982.

Cousineau, McGuire, Shaughnessy & Anderson, and Kathleen Drake, Minneapolis, for appellant.

Schmidt, Thompson, Thompson & Johnson and David C. Moody, Willmar, for respondent.

PETERSON, Justice.

Plaintiff Richard Hastings was involved in an automobile accident on October 20, 1979, while a passenger in a friend's automobile, and sustained a serious brain injury. There is no dispute that his injuries far exceed the insurance coverages available on the two involved automobiles. This declaratory judgment action was commenced by plaintiff against defendant United Pacific Insurance Company seeking reformation of the policy of insurance held by plaintiff's mother, Nancy Hastings Fairfield, to include $400,000 in underinsured motorist coverage. The issue on appeal is whether the trial court erred in concluding that materials mailed by United Pacific did not sufficiently comply with Minn.Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980), and in ordering the reformation of the policy issued by United Pacific to afford coverage in the amount of $400,000.

The Hastings family held automobile insurance with United Pacific from May 13, 1974, until the date of plaintiff's accident. The agent representing United Pacific negotiated with plaintiff's father, Lee Hastings, until the latter's death on March 9, 1977; thereafter, the policy was reissued, naming Nancy Hastings as the insured and covering plaintiff as an additional insured. On the date of the accident, the policy covered four separate automobiles with bodily injury liability coverage of $100,000 per person and $300,000 per accident on each vehicle. There was no underinsured motorist coverage in the policy in effect on October 20, 1979.

United Pacific claims that it made a legally adequate offer of optional underinsured motorist coverage by mailing a "Dear Policyholder" letter and Minnesota No-Fault Automobile Coverage option form in December 1974 and a followup letter in January 1975. The first letter explains that the no-fault act was to become effective on January 1, 1975, and sets forth the minimum compulsory coverages for bodily

injury liability, property damage liability, uninsured motorist coverage, medical expense benefits and work loss or essential services benefits. After brief mention of the intent of the no-fault act, its effect on third-party recovery and the penalties for failing to maintain the required insurance, the letter describes changes that might have to be made to existing policies and premium rates.[1] The "Dear Policyholder" letter ends with the following:

Optional Coverages

Additional optional coverages and deductibles (as described in the enclosed brochure) may be purchased, but you are not required to do so. If any optional coverages or deductibles are desired, please complete and return the enclosed form to your agent.

If you desire any further information on the No-Fault Law or your automobile insurance, please write or call your agent.

The option form included in the first mailing allowed the insured to express interest in various options that were listed under six headings: personal injury protection deductibles, additional personal injury protection, additional insureds other than resident relatives, additional bodily injury limits, additional uninsured motorist limits and underinsured motorist coverage. Under the last heading, the insured is told simply that underinsured motorist coverage "is offered as an option" with limits of $50,000 per person/$100,000 per occurrence or $100,000 per person/$300,000 per occurrence. The insured is requested to check his or her policy "as you may already have selected this coverage or the coverage selected may no longer be offered."

The followup letter sent in January 1975 made no mention of underinsured motorist coverage.[2] United Pacific alleges no other communications by which it might meet its burden of establishing compliance with the mandatory offer provision.

Recently, in *League General Insurance Co. v. Tvedt*, 317 N.W.2d 40 (Minn.1982), we again had occasion to examine the mandatory offer provision in Minn.Stat. § 65B.49, subd. 6 (1978) (repealed 1980), and to review our application in earlier cases of the provision and its predecessor statute, Minn.Stat. § 65B.25 (1971). We there held that the mailed offering materials in question satisfied section 65B.49, subd. 6, because the materials enabled the insured to make an intelligent decision regarding the purchase of optional coverage. From *League General* and the cases cited therein, four basic concerns have emerged relevant to determining compliance with the mandatory offer provision.

■ The first of these concerns, where the purported offer is made in other than

1. The discussion of policy and premium changes reads as follows:

   Your Automobile Insurance Policy
   The enclosed Minnesota Personal Injury Protection Endorsement should be attached to your policy. This form has been approved by the Minnesota Insurance Division and provides the required no-fault personal injury protection coverages of [Medical Expense Benefits and Work Loss or Essential Services Benefits].
   If your present policy provides limits for Liability and Uninsured Motorist Coverage which are equal to or greater than those required by the new law [as indicated earlier in the letter], no change will be made. However, if your policy provides limits which do not meet the new requirements, your policy limits will be increased automatically to meet the minimum requirements effective January 1, 1975.
   Premium Adjustment

   Rate reductions will be made for the required coverages of Bodily Injury Liability, Medical Expense and Uninsured Motorists, but this change in premium reflected in your policy you are presently carrying will be adjusted from January 1, 1975 to the date of your next renewal. In most cases this will represent a return premium, however, if your present limits are below those required, an additional premium may be due the company.

2. The followup letter reads:
   This is to advise that we are in the process of renewing your automobile insurance as of January 1, 1975.
   As of that date we are also including No Fault coverage in compliance with the State law for the minimum limits unless you have advised us otherwise.
   Kindly accept this letter as evidence that coverage is in force for you pending receipt of your renewal policy and statement of premium.

face-to-face negotiations, is that the notification process be commercially reasonable. *Jacobson v. Illinois Farmers Insurance Co.,* 264 N.W.2d 804, 808 (Minn.1978). The trial court ruled that United Pacific's agent used a commercially reasonable process to communicate the availability of optional coverages, and respondent makes no objection to this ruling.

Second, the insurer must specify the limits of optional coverages and not merely offer additional coverage in general terms. *Holman v. All Nation Insurance Co.,* 288 N.W.2d 244, 250 (Minn.1980). Section 65B.49, subd. 6(e), required that underinsured motorist coverage be offered "in an amount at least equal to the insured's residual liability limits and also at lower limits which the insured may select." The trial court found that United Pacific did not "advise the insured of the availability of underinsured motorist coverage in an amount less than $50,000 per person or $100,000 per accident." The specific amounts of coverage offered to Lee Hastings included one option with limits equal to his residual liability limits and one option at a lower limit. Neither the statute nor our decision in *Holman* requires more.

The third concern is that the insurer intelligibly advise the insured of the nature of the optional coverage. *Kuchenmeister v. Illinois Farmers Insurance Co.,* 310 N.W.2d 86 (Minn.1981). In *Kuchenmeister,* the only reference to underinsured motorist coverage in Illinois Farmers' communications to its insured was language appearing at the bottom of a premium renewal notice stating, "Did you know that you may now have underinsured motorist and/or uninsured motorist coverage in amounts up to your bodily injury liability limits. If interested, contact your agent." *Id.* at 88. In holding this language to be insufficient to effect compliance with the statute, we said:

> The message printed on the bottom of the premium notice was, at best, vague. It gave no explanation of underinsured motorist coverage and how it differed from uninsured coverage. Respondent, in the instant case, stated that he only glanced over the message. Thinking it related to uninsured motorist coverage, a coverage included in his policy, he did not carefully scrutinize it. Perhaps in the broadest sense the message constituted an offer. It is, however, far from being a meaningful offer.

*Id.*

■ This is the critical concern here, for the technical language of insurance is not easily understood by many, if not most, purchasers of insurance. "Underinsured motorist coverage" is an example of language that may not convey a clear message to the uninitiated insured, who might well understand it to be supplemental coverage for the insured whose own liability coverage for bodily injury to others is inadequate. To an insured with ample bodily injury liability coverage, the listing of "underinsured motorist coverage" as an available option, without further explanation, does not constitute a meaningful offer sufficient to enable the insured to assess why the offer should be carefully considered. In *League General,* we noted with approval that the insurer had expressly urged serious consideration of optional liability packages, citing as reasons the increases in vehicle values and personal injury awards. *League General,* 317 N.W.2d at 41. *See also Jacobson v. Illinois Farmers Insurance Co.,* 264 N.W.2d at 805 (mailing insert "explained the availability and operation of the new coverage"). We hold that the mailed notices sent by United Pacific did not satisfy this crucial concern.

This concern is particularly applicable to the facts before us. Neither of plaintiff's parents graduated from high school. The record reveals nothing about Lee Hastings' knowledge of insurance, but it is reasonable to infer from his practice of carrying substantial coverage for bodily injury liability, property damage liability and uninsured motorist protection[3] that, had he understood the nature of underinsured motorist

---

**3.** The Hastings policy included bodily injury coverage of $100,000 per person/$300,000 per accident, property damage coverage of $50,000 and uninsured motorist coverage of $100,-000/$300,000.

coverage, he would have protected his family from that risk as well. Nancy Hastings Fairfield testified at trial that she had no information about insurance. In fact, after her husband's death, she notified insurer's agent, explained that the responsibility of insuring her family now rested upon her and asked the agent to "help [her] out."

The fourth concern is that the insured be apprised that optional coverages are available for a relatively modest increase in premiums. *Holman v. All National Insurance Co.*, 288 N.W.2d at 250. In *League General*, we held that this concern does not require specific premium rate quotations with each offer of optional coverage where, as in that case, the insured is told that substantially more protection is available for only a small additional charge. *League General*, 317 N.W.2d at 42–43. We hold that United Pacific has also failed to satisfy this concern, inasmuch as the insured was told only that optional coverages "may be purchased."

Affirmed.