Patricia M. HENRIKSEN, Appellant,

v.

ILLINOIS FARMERS INSURANCE COMPANY, Respondent.

No. C9–84–1737.

Court of Appeals of Minnesota.

April 2, 1985.

Gary Stoneking, Hvass, Weisman & King, Minneapolis, for appellant.

Eric J. Magnuson, Jeremiah P. Gallivan, Minneapolis, for respondent.

Michael C. Snyder, Meshbesher, Singer & Spence, Ltd., Minneapolis, for amicus curiae Minnesota Trial Lawyers Ass'n.

Heard, considered and decided by LANSING, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from summary judgment entered against the insured, Patricia Henriksen, on her declaratory judgment action against her insurer. The trial court ruled that the written notices mailed to Henriksen complied with the former statutory requirement of an offer of underinsured motorists coverage. We reverse.

## FACTS

Appellant Patricia Henriksen was insured by Illinois Farmers beginning in 1967. The policies at no time included underinsured motorist coverage. On June 18, 1977, Henriksen was injured in a two-car accident. The driver of the other vehicle was insured, but Henriksen claims that he was underinsured, and seeks by this action to impose by law the underinsured motorists coverage, which she claims was not offered to her. There is no claim of a verbal offer and the parties have agreed on the written notices that were sent.

In 1972, Farmers sent an "Application For Underinsured Motorist" in which the coverage was explained and various dollar limits were listed, along with the premiums applicable and boxes to check for the coverage desired. A line was provided for the policyholder's signature, with the note that "[t]he coverage will be effective on the date the application is received in our office."

In the fall of 1974, Farmers sent with the policy a "Dear Policyholder" letter explaining some of the provisions of the new No-Fault law to be effective January 1, 1975. This summary included the following paragraph:

In addition to the mandatory coverages described above, Minnesota law requires all insurance companies to offer Underinsured Motorists Coverage to their policyholders. If you are involved in an automobile accident for which another driver is legally liable, and your damages exceed his policy limits, Underinsured Motorists Coverage will pay your uncompensated damages if your Underinsured Motorists limits are higher than his policy limits. Underinsured Motorists Coverage is available in a broad range of limits for a nominal extra premium and we urge you to contact your Farmers

## 898

Agent if you wish to obtain this valuable protection.

Farmers also sent a series of policy renewal notices after January, 1976, which included the following language:

DID YOU KNOW THAT YOU MAY NOW HAVE UNDERINSURED MOTORIST COVERAGE IN AMOUNTS UP TO YOUR BODILY INJURY LIABILITY LIMITS. IF INTERESTED, CONTACT YOUR AGENT.

### ISSUES

1. Did the trial court err in considering the pre-no-fault notice?

2. Did the trial court err in considering the 1974 and 1976 notices cumulatively?

### ANALYSIS

*1. Consideration of the 1972 notice*

The trial court relied only in part on aggregation of the information in the three notices in determining that a meaningful offer was made. The court's memorandum states, in part, as follows:

The second *Hastings* requirement is that the insurer must specify the limits of optional coverage. This requirement was most clearly met by the first of the three mailings. The form describes the mandatory offer requirement, explains the nature of underinsured coverage, and provides a chart displaying six distinct coverage packages together with the corresponding premiums. Additionally, the second mailing states the following: "Underinsured motorist coverage is available in a broad range of limits for a nominal extra premium ...." Either of these documents standing alone are sufficient to satisfy the requirement. Standing together they provide more than adequate information upon which the insured could make an intelligent decision regarding underinsured coverage.

■ This court in *Maher v. All Nation Ins. Co.,* 340 N.W.2d 675, 679 (Minn.Ct. App.1983), stated as follows:

We are concerned that the trial court relied on the 1972 letter in determining

that Mutual Service made a meaningful offer. We note that the legislature enacted the no-fault act primarily to provide compensation to injured persons through adequate coverage. Minn.Stat. § 65B.42 (1982). This purpose is reasonably furthered only by requiring the insurer to offer the underinsured motorist coverages in response to the new no-fault act. [cites omitted]

Therefore, the 1972 notice, by far the most explicit "offer" sent, should not have been considered by the trial court, according to *Maher.* Although cases cited by respondent, particularly *Hastings v. United Pacific Ins. Co.,* 318 N.W.2d 849 (Minn.1982), indicate that a time lag between notices does not prevent their being considered together, they do not provide authority for consideration of pre-No-Fault notices.

*2. Combination of 1974 and 1976 notices*

In *Hastings v. United Pac. Ins. Co.,* 318 N.W.2d 849, 852 (Minn.1982), the supreme court, defined the test for a "meaningful offer" of underinsured motorists coverage, the third "concern" of which is "that the insurer intelligibly advise the insured of the nature of the optional coverage."

The 1974 notice did attempt to explain underinsured motorists coverage, but in a fashion that appellant claims was misleading. The explanation given indicated that for the coverage to be applicable, not only would the insured's damages have to exceed the other motorist's liability limits, but the insured's underinsured motorists limits would also have to exceed those liability limits. Thus, the insurer could offset the other motorist's liability limits against its own underinsured motorists coverage. *See, Lick v. Dairyland Ins. Co.,* 258 N.W.2d 791 (Minn.1977), (interpreting the pre-No-Fault statute). Since we reverse on other grounds, it is not necessary to address this issue.

The second *Hastings* requirement is that the insurer must specify the limits of optional coverages and not merely offer additional coverage in general terms.

318 N.W.2d at 852. The statute required that coverage be offered

> in an amount at least equal to the insured's residual liability limits and also at lower limits which the insured may select.

Minn.Stat. § 65B.49, subd. 6(e) (repealed 1980).

The 1974 notice told the policyholder only that underinsured motorists coverage was available "in a broad range of limits." The 1976 policy renewal notice did indicate that coverage was available "in amounts up to your bodily injury liability limits," which is all that the statute required. The 1976 notice, however, did not explain what underinsured motorists coverage was, information for which the insured would have to refer back to the 1974 notice.

■ The trial court's ruling that the 1974 notice by itself satisfied the second *Hastings* requirement is clearly erroneous. The reference to coverage "in a broad range of limits" was the vague "offer [of] additional coverage in general terms" rejected in *Hastings*. 318 N.W.2d at 852.

The trial court also found that the 1976 notice could be considered cumulatively to the 1974 notice in determining whether the offer requirement was met. We find no authority for considering together notices mailed at long intervals in determining whether a meaningful offer has been made. In *Hastings*, the court considered a December, 1974, mailing and a follow-up letter in January, 1975. Although a significant lapse occurred before the accident in 1979, this does not signify that passage of time between notices is irrelevant, as respondent contends, but, rather, that only one offer was required by the no-fault statute.

This court, in rejecting the claim that a pre-No-Fault notice could be considered, stated as follows:

> We think it is unreasonable and unrealistic to expect that consumers will remember an insurance policy notice years after its receipt.

*Maher v. All Nation Insurance Co.*, 340 N.W.2d 675, 679 (Minn.Ct.App.1983). Without these notices, the second *Hastings* requirement was not met.

The overall concern of the supreme court, expressed through articulation of the four requirements in *Hastings*, is that the insurer make a "meaningful offer," *Kuchenmeister*, 310 N.W.2d 86 at 88, of underinsured motorists coverage. A piecemeal compliance with the offer requirement, by means of widely separated mailings, contradicts the notion of a "meaningful offer."

### DECISION

The notice sent prior to enactment of the No-Fault Act is not to be considered in determining whether a meaningful offer of underinsured motorist coverage was made. The 1974 notice did not specify the limits at which coverage was available, and this deficiency could not be cured by later notices.

Reversed.