**Roy ERICKSON, for and on Behalf of Randal Dean ERICKSON, Respondent,**

v.

**ALLSTATE INSURANCE COMPANY, Appellant.**

No. C2–85–228.

Court of Appeals of Minnesota.

June 25, 1985.

Jeffrey R. Anderson, Susan Bedor, Reinhardt & Anderson, St. Paul, for respondent.

R. Gregory Stephens, Laura S. Underkuffler, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and PARKER and FOLEY, JJ.

## OPINION

PARKER, Judge.

This is an appeal from a grant of summary judgment to respondent Roy Erickson, who brought a declaratory judgment action on behalf of his son, Randal Dean Erickson, against appellant Allstate Insurance Co. Erickson alleged that Allstate failed to make a legally adequate offer of additional uninsured motorist coverage under Minn. Stat. § 65B.49, subd. 6(f) (repealed 1980). We reverse and remand.

## FACTS

On July 1, 1979, Randal Erickson was severely injured in a single-car accident while riding as a passenger in an uninsured automobile driven by Robert Joseph Christian. As a result of the accident Randal was brain-damaged and requires total nursing care.

Randal Erickson first obtained automobile insurance coverage from Allstate in 1977. The policy covered one vehicle and included uninsured motorist coverage and bodily injury liability coverage with identical limits of $25,000 per person, $50,000 total per accident. This insurance policy was in effect on the date of the accident.

At the time of the accident Randal resided in the home of his father, Roy Erickson, who has been insured with Allstate since the early 1960's. At the time of the accident his policy covered two vehicles. The policy included uninsured motorist coverage in the amount of $25,000/$50,000 and bodily injury liability coverage of $50,000/$100,000.

Richard Zaharias, operations division manager for Allstate, testified in his deposition that in the years from 1975 to 1979, Allstate sent two inserts known as X1455 and X1455-1 to its Minnesota insureds along with their premium renewal notices. The purpose of the inserts was to notify insureds of the availability of additional uninsured and underinsured motorist coverage. The inserts were sent to Roy Erickson in 1975, 1978, and 1979; they were sent to Randal Erickson in 1978 and 1979. Roy did not recall if he received the mailers, and Randal is unable to testify.

Both Ericksons purchased their policies from Emmert Berger, an Allstate agent. The transactions between Berger and the Ericksons were conducted over the telephone. After the No-Fault Act was passed, requiring a mandatory offer of uninsured and underinsured motorist coverage, Berger said it was his habit to discuss those coverages with insureds when they made a change in automobiles. Normally Berger would suggest that insureds purchase uninsured and underinsured coverage equal to their liability limits. He specifically recalled telling Randal Erickson that additional uninsured motorist coverage was available.

To date Allstate has paid $25,000 in uninsured motorist benefits, $20,000 in medical no-fault benefits, and $10,000 in loss of income benefits under Randal Erickson's policy. It has also paid $50,000 in uninsured motorist benefits under his father's policy.

Roy Erickson brought this action for and on behalf of his son, alleging in part that Allstate made legally inadequate offers of additional uninsured motorist coverage to both of them under Minn.Stat. § 65B.49, subd. 6(f) (repealed 1980). The case was submitted to the trial court on cross-motions for summary judgment. The court held that inserts X1455 and X1455-1 did not constitute adequate offers of uninsured motorist coverage under Minn.Stat. § 65B.49, subd. 6(f).

## ISSUES

1. Did the trial court err by ruling that Allstate did not make a legally sufficient offer of additional uninsured motorist benefits to Roy and Randal Erickson?

2. Did the trial court err by failing to rule on Roy Erickson's insurance policy?

## DISCUSSION

### I

■ At the time the insurance policies in this case were renewed Minn.Stat. § 65B.49, subd. 6(f) (now repealed), provided that insurance companies must offer the following optional coverages in addition to compulsory coverages:

Uninsured motorist coverage in addition to the minimum limits specified in subdivision 4, so as to provide total limits of uninsured motorist coverage equal to the residual bodily injury liability limits of the policy, or smaller limits as the insured may select.

Failure to make a mandatory offer of insurance under this subdivision will result in the imposition of such coverage as a matter of law. *See Holman v. All Nation Insurance Co.*, 288 N.W.2d 244, 250 (Minn.1980).

■ In order to constitute a legally adequate offer, a written notice must satisfy a four-part test. *See Hastings v. United Pacific Insurance Co.*, 318 N.W.2d 849, 851 (Minn.1982). The first requirement, "where the purported offer is made in other than face-to-face negotiations, is that the notification process be commercially reasonable." *Id.* at 851–52 (citing *Jacobson v. Illinois Farmers Insurance Co.*, 264 N.W.2d 804, 808 (Minn.1978)). The parties stipulated in this case that the method used by Allstate was commercially reasonable.

Second, "the insurer must specify the limits of optional coverages and not merely offer additional coverage in general terms." *Id.* at 852 (citing *Holman*). Allstate argues that the language of both inserts complies with this requirement. Insert X1455 explains that "[a]ll auto policies are required to have uninsured motorist coverage with minimum limits of 25/50

($25,000 per person and $50,000 per accident)" and that additional coverage is available in a variety of limits, up to the insured's "Bodily Injury Liability limits." Insert X1455–1 contains almost identical language.

Erickson argues that Allstate did not specify the limits of optional coverages but rather offered them in general terms. He argues that *Hastings* requires that specific offers of insurance be stated in the form of numerical value. He claims the term "Bodily Injury Liability limits" does not give the insured specific information regarding the value of the policy being offered because most insureds do not understand the terminology.

■ We disagree with Erickson's interpretation of *Hastings*. In *Hastings* the insured had bodily injury liability coverage of $100,000 per person and $300,000 per accident on each vehicle. *See id.*, 318 N.W.2d at 850. The court said, "[t]he specific amounts of coverage offered * * * included one option with limits equal to [the insured's] residual liability limits and one option at a lower limit. Neither the statute nor our decision in *Holman* requires more." *Id.* at 852. This does not amount to a requirement that all offers be given in numerical form to be satisfactory.

■ Furthermore, this court has recently stated that a written offer which specifies that optional coverage is available "in amounts up to [the insured's] bodily injury liability limits" meets the statutory requirement. *See Henriksen v. Illinois Farmers Insurance Co.*, 364 N.W.2d 896, 899 (Minn. Ct.App.1985). We find that the limits of additional uninsured motorist coverage are adequately explained in that they are specifically discussed in relation to the insured's policy limits.

■ The third *Hastings* requirement is that the insurer intelligibly advise the insured of the nature of the optional coverage. *See id.*, 318 N.W.2d at 852 (citing *Kuchenmeister v. Illinois Farmers Insurance Co.*, 310 N.W.2d 86 (Minn.1981)). A

meaningful offer must be sufficient to "enable the insured to assess why the offer should be carefully considered." *Id.* Offers which urge serious consideration of optional liability packages, citing as reasons the increases in vehicle values and personal injury awards, have been noted with approval. *Id.* (citing *League General Insurance Co. v. Tvedt,* 317 N.W.2d 40, 41 (Minn.1982)). *See also Jacobson,* 264 N.W.2d at 805.

■ We hold that Allstate's insert sufficiently enabled the Ericksons to assess why the offer of additional uninsured motorist coverage should be carefully considered. The insert headings stated in bold print, "Important Information About Your Uninsured Motorist Limits." In addition, insert X1455 explained:

> You can increase your Uninsured Motorist coverage up to your Bodily Injury Limits. This protection offers you higher limits for your bodily injury damages occasioned by the uninsured motorist who is legally liable for those damages.

Insert X1455–1 contained nearly identical language. This is a straightforward statement of the way uninsured motorist coverage is commonly interpreted. In addition, the inserts both stressed the importance of additional coverage and gave reasons why it should be carefully considered. Insert X1455 explains the reason for coverage above the minimum limits:

> Here's why this coverage is so important—courtroom judgments are soaring and in many cases the minimum Uninsured Motorist limits of $25,000/$50,000 may be too low. By having your limits increased, you gain valuable protection at low cost.

Form X1455–1 says, "these minimum limits may be too low to adequately protect you against today's rising medical costs."

"The fourth concern is that the insured be apprised that optional coverages are available for a relatively modest increase in premiums." *Hastings,* 318 N.W.2d at 853 (citing *Holman* ). "[T]his concern does not require specific premium rate quotations with each offer of optional coverage where * * * the insured is told that substantially more protection is available for only a small additional charge." *Id.*

Allstate's inserts stated, "[b]y having your limits increased, you gain valuable protection at low cost" (X1455) and "[b]y increasing your limits, you can gain valuable protection at low cost" (X1455–1). We agree with Allstate that this language is very similar to language approved in other cases. *See, e.g., League General,* 317 N.W.2d at 43 (language stating that optional coverages would "provide substantially more protection, with only a small increase in * * * premium" held sufficient); *Squier v. Milwaukee Mutual Insurance Co.,* 356 N.W.2d 832, 834 (Minn.Ct.App.1984), *pet. for review denied,* (Minn. Feb. 6, 1985) (approving the statement in a written offer that various types of additional optional insurance could be obtained "at reasonable costs").

■ Finally, this court has already implied in dictum that Allstate's language meets the fourth *Hastings* requirement. *See Eckman v. Allstate Insurance Co.,* 358 N.W.2d 453 (Minn.Ct.App.1984), *pet. for review denied,* (Minn. March 13, 1985). In *Eckman* this court held that the first insert stuffer which was sent to the insureds in this case (X1455) was an inadequate offer of *underinsured* motorist coverage because the phrase "low cost" in the stuffer did not clearly refer to the offer of underinsured motorist coverage but rather to the offer of *uninsured* coverage. *Id.* at 456. The court implied, however, that the words "low cost" would have met the *Hastings* requirement had they referred to underinsured motorist coverage. *Id. See also Wearn v. Allstate Insurance Co.,* 366 N.W.2d 338, 339 (Minn.Ct.App. Apr. 16, 1985) (the offer of underinsured coverage in X1455 also misstates the nature of that coverage). Because the phrase "low cost" refers to the offer of uninsured coverage at issue in this case, we hold that the fourth requirement is met.

Erickson's contention that the Minnesota Supreme Court expanded the requirements

regarding price information in *Randall v. State Farm Mutual Automobile Insurance Co.*, 335 N.W.2d 247 (Minn.1983), is without merit. That case concerned offers of motorcycle insurance coverage involving high increases in premium cost.

Allstate's written offers of additional uninsured motorist benefits to the Ericksons through inserts X1455 and X1455-1 meet all of the *Hastings* requirements. Therefore, we hold that the trial court erred in finding the offers legally insufficient.

## II

In his motion for summary judgment Erickson asked the court, in part, to order the insurance policies of both Roy and Randal Erickson reformed to include additional uninsured motorist protection equal to the residual bodily injury limits of each policy. In its order, however, the trial court stated:

> There are two questions raised by the Plaintiff's Motion for Summary Judgment. The questions are whether the insurance policy of Randal Dean Erickson should be reformed to include additional uninsured benefits equal to the residual bodily injury limits of his policy and whether Randal Dean Erickson is entitled to additional Personal Injury Protection Benefits.

Similarly, in its accompanying Memorandum, the court stated:

> The dispositive issue is whether Randal Dean Erickson's insurance policy should be reformed to include both additional uninsured benefits and additional Personal Injury Protection Benefits. Other matters contained in the Plaintiff's original motion to this Court have been resolved by the parties.

The judgment, however, states simply that plaintiff's motion for summary judgment is granted.

It appears from the trial court's memorandum and order that no ruling on Roy Erickson's insurance policy was issued. We therefore remand this case to the trial court to amend the order for judgment and

judgment as to both Roy and Randal Erickson to conform with this decision.

Allstate also alleged that the trial court erred in ordering Randal Erickson's insurance policy reformed to include additional uninsured motorist benefits because his policy contained uninsured motorist coverage equal to its liability limit. In addition, Allstate argued that the trial court erred in granting Erickson's summary judgment motion reforming the insurance policies because even if the written offer were inadequate, a material issue of fact remains as to the existence of an adequate oral offer.

Because we hold that Allstate's mailed inserts made a legally sufficient offer of additional uninsured motorist coverage to both Roy and Randal Erickson, we do not reach these issues.

### DECISION

The trial court erred in finding that inserts X1455 and X1455-1 mailed to Roy and Randal Erickson by Allstate did not constitute a legally sufficient offer of additional uninsured motorist benefits. Because the trial court's order and memorandum failed to indicate the trial court's ruling as to Roy Erickson's insurance policy, we reverse and remand to the trial court to amend the order for judgment and judgment in accordance with this decision.

Reversed and remanded.