Kenneth **OSTERDYKE**, Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.**, Respondent.

No. C6–84–1873.

Court of Appeals of Minnesota.

July 9, 1985.

Review Denied Sept. 26, 1985.

Douglas E. Schmidt, Grose, Von Holtum, Sieben & Schmidt,. Ltd., Minneapolis, for appellant.

Laura S. Underkuffler, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondent.

Heard, considered and decided by NIER-ENGARTEN, P.J., and LANSING and RANDALL, JJ.

## OPINION

LANSING, Judge.

Appellant Kenneth Osterdyke brought this declaratory judgment action to reform his State Farm automobile insurance policy to include underinsured motorist coverage, claiming that State Farm failed to make a mandatory offer of underinsured coverage as required by Minn.Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980). The trial court found that State Farm made a legally sufficient offer of underinsured coverage, and Osterdyke appeals. We reverse.

## FACTS

In March 1980 Kenneth Osterdyke was seriously injured in an automobile accident. The driver of the other vehicle was charged with driving while intoxicated, and he had liability coverage of only $25,000 per person. Osterdyke was insured under three State Farm policies, none of which had underinsured motorist coverage. He purchased the policies in 1970, 1975, and 1976. After settling with the other driver, Osterdyke brought this action, alleging State Farm had failed to offer him underinsured motorist coverage.

## ISSUE

Did the trial court err in finding that State Farm made a legally sufficient offer of underinsured motorist coverage to Osterdyke?

## ANALYSIS

Minn.Stat. § 65B.49, subd. 6 (1978) (repealed 1980), required insurers to offer their insureds certain optional coverages, including underinsured motorist coverage.[1] To comply with the mandatory offer provision, (1) the insurer's notification process must be commercially reasonable, (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms, (3) the insurer must intelligibly advise the insured of the nature of the optional coverage, and (4) the insured must be told that optional coverages are available for a relatively modest increase in premiums. *See Hastings v. United Pacific Insurance Co.*, 318 N.W.2d 849, 851–53 (Minn.1982). The law requires insurers to make one legally sufficient offer of optional coverages "at some time in the insurance dealings between the parties." *See Randall v. State Farm Mutual Automobile Insurance Co.*, 335 N.W.2d 247, 250 (Minn.1983). The insurer has the burden of proving it made the mandatory offer of coverages. *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244, 248 (Minn.1980).

State Farm mailed brochures to policyholders describing underinsured coverage in 1974, 1975, and 1978. Marshall Johnson, the agent who sold the policies to Osterdyke, did not testify at trial. He was de-

---

1. The legislature made several changes relating to uninsurance and underinsurance coverages in the last session. *See* 1985 Minn. Laws ch. 168, § 11; 1985 Minn. Laws ch. 309, § 5; 1985 Minn. Laws Spec. Sess. ch. 10, § 68; 1985 Minn. Laws Spec.Sess.ch. 13, § 191. *But see* 1985 Minn. Laws Spec.Sess. ch. 10, § 123 (repealing amendments and declaring void any amendment enacted at this special session).

posed twice, however, and the deposition transcripts were received at trial. In one, dated June 1983, Johnson said that he orally offered underinsured motorist coverage to Osterdyke twice between 1971 and 1973 and once some time after that, although he could not remember in which year the conversation took place. In another, dated February 1984, Johnson said he made no oral offers before 1975 but made three oral offers after that time. He did not recall when these conversations took place.

The trial court found:

> [I]n October of 1974, Defendant [State Farm] conducted mass mailings to all Minnesota State Farm policyholders, including the Plaintiff, and again upon the first six-month renewal of each policy occurring in 1975 and upon each renewal of policies in 1978. These mass mailings were accomplished through use of a computerized mailing and stuffing machine customarily used in the insurance industry.
>
> * * * [T]he printed information stuffed in the envelopes addressed and mailed to all Minnesota State Farm policyholders in the mass mailings set forth * * * above, contained language making offers of specified limits of optional coverages, including underinsured motorist coverage; setting forth the nature of such optional coverage in understandable language; and that such optional coverage was available for [a] relatively modest increase in premium.

The trial court therefore relied solely on the mass mailings rather than the alleged oral offers in concluding that State Farm's offer was adequate. It is impossible to determine from the findings which mailing the trial court found to be an adequate offer, or if the court aggregated parts of different mailings to find one adequate offer.

### The October 1974 Offer

The brochure mailed to policyholders in October 1974 was prepared in response to the No-Fault Act, which became effective in January 1975. The brochure described underinsured coverage as follows:

**UNDERINSURED MOTORIST (Coverage W)**

This coverage applies if you are involved in an automobile accident for which the other driver is legally liable and *judgments obtained* for injuries to you or your passengers exceed his policy's Bodily Injury Liability limits.

If you do not presently carry this valuable coverage you may select it now. All you have to do is mark the appropriate block on the Statement of Coverages form, and it will automatically be added to your policy with limits equal to your Bodily Injury Liability limits, effective January 1, 1975.

If you presently carry Underinsured Motorist Coverage and your limits are less than $25,000/$50,000, such limits are increased to $25,000/$50,000 at less premium than you have been paying for the lower limits.

The premium for Coverage W will vary according to the limits selected. The rate for $100,000/$300,000 limits would only be $6.00 semiannually. Lower limits are also available at a reduced premium. If interested in other limits, please contact your State Farm agent.

(Emphasis added).

■ Osterdyke argues that this offer incorrectly describes the nature of underinsured coverage because it states that a judgment is necessary before the insured can collect underinsured benefits. Before repeal, the underinsured statute read:

> [T]he reparation obligor agrees to pay damages the insured is legally entitled to recover on account of a motor vehicle accident but which are uncompensated because the total damages exceed the residual bodily injury liability limit of the owner of the other vehicle.

Minn.Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980). The statute required no judgment, and in fact, underinsurance benefits at the time this policy was issued were meant to be available to the insured before a settlement or judgment was ob-

tained against the tortfeasor. *See Schmidt v. Clothier*, 338 N.W.2d 256, 261 (Minn.1983) (the underinsurer's liability depends not on the settlement but rather on the readily ascertainable liability limit of the defendant).

Osterdyke argues that this misinformation could dissuade an insured from purchasing the coverage and that therefore the 1974 offer was inadequate. State Farm argues that "judgment," as a word used to establish the liability of another party, is a simple way to illustrate the concept. They argue that "a complete listing of every conceivable situation or fact configuration would have done nothing but confuse the insured."

The 1974 offer meets the other three *Hastings* requirements: the parties stipulated at trial that the mailings were a commercially reasonable method of making the offers, the offer specifies the limits of optional coverage, and it provides the actual premium ($6) for the highest limits and says lower limits are available at a reduced premium.

### The 1975 Offer

■ During the first six months of 1975 State Farm reoffered underinsured motorist coverage to its Minnesota insureds. This offer explained underinsured coverage as follows:

**UNDERINSURED MOTORIST (Coverage W)**

You may wish to protect yourself (your family and other passengers) against the possibility of major uncompensated loss arising from a motor vehicle accident due to the fault of another person whose Bodily Injury Liability limits are insufficient to pay your legally established damages. Coverage W * * * will provide such protection to the extent your Coverage W limits exceed the responsible person's Bodily Injury liability limits, provided

... you obtain a judgment in excess of the responsible person's Bodily Injury Liability limits, and

... the responsible person's Bodily Injury Liability limits equal or exceed the minimum Bodily Injury Liability limits required by Minnesota's Financial Responsibility Law ($25,000 per person/$50,000 per accident).

Any payment under the responsible person's Bodily Injury Liability limits or other sources of benefits will be deducted from applicable payments under your Coverage W.

For Example: Assume your Coverage W limits are $50,000 per person, and it is established that you are legally entitled to recover $45,000 in damages from another person who carries Bodily Injury Liability limits of only $25,000 per person. Coverage W will pay the $20,000 not compensated by the responsible person's Bodily Injury Liability Coverage ... however, if your Coverage W limits are only $25,000 per person, Coverage W will not apply in this instance.

\* \* \* \* \* \*

The premium for Coverage W will vary according to the limits selected. The rate for $100,000/$300,000 limits is only $6.00 semi-annually. Lower limits are available at a lower rate.

In *Ritchie v. United Services Automobile Association*, 363 N.W.2d 851 (Minn.Ct. App.1985), *petition for rev. denied*, (Minn. May 24, 1985), this court held that a similar offer was defective in two critical respects: (1) it stated that underinsured coverage provides protection only when the negligent driver's liability limits are less than the insured's underinsured limits, and (2) it stated that the insurer will offset the tortfeasor's liability limits against its own underinsured motorist coverage. *See id.* at 853. The insurer thus had an affirmative duty to re-offer coverage after the 1977 amendments clarified the nature and scope of underinsurance. *See Wearn v. Allstate Insurance Co.*, 366 N.W.2d 338, 339 (Minn. Ct.App.1985), *petition for rev. denied*, (Minn. July 2, 1985). The 1975 State Farm offer contains the same two critical defects and is therefore inadequate as a matter of law.

*The 1978 Offer*

■ In 1978 State Farm mailed out a brochure describing underinsured coverage as follows:

**Coverage W-Underinsured Motor Vehicle Coverage**

This coverage will pay damages for bodily injury to an insured who is legally entitled to receive, but has not received compensation, because the legally liable person has inadequate coverage.

This offer plainly does not comply with the *Hastings* requirements because it does not specify the limits of optional coverage or apprise the insured that optional coverages are available for a relatively modest increase in premium; nor does the 1978 mailing constitute a reoffer of underinsured as required by *Wearn.*

---

■ We conclude that the 1974 offer, although somewhat misleading in that it requires a judgment before underinsurance benefits become available, was, standing alone, a legally sufficient offer. It was not inaccurate at the time it was made, and we do not think it was so misleading as to negate the sufficiency of the offer as a whole, which otherwise complied with the *Hastings* requirements.

■ The 1974 offer is not sufficient, however, to survive the inadequate 1975 offer. A misleading offer, followed by one which is insufficient as a matter of law, is no more meaningful to an insured than no offer at all. The 1975 offer "tainted" the 1974 offer, *see Squier v. Milwaukee Mutual Insurance Co.,* 356 N.W.2d 832, 835 (Minn.Ct.App.1984), and imposed upon State Farm the affirmative duty to re-offer coverage in conformity with the 1977 amendments, *see Wearn v. Allstate,* 366 N.W.2d at 339. State Farm cannot combine the correct parts of the various offers to satisfy the requirements of a meaningful offer. *See Henriksen v. Illinois Farmers Insurance Co.,* 364 N.W.2d 896, 899 (Minn. Ct.App.1985).

■ State Farm argues that if the written offers are legally insufficient, a remand is necessary because the trial court made no findings about the adequacy of Marshall Johnson's oral offers. As noted above, Johnson's testimony was presented to the trial court in the form of deposition transcripts. The transcripts show that Johnson contradicted himself several times about the dates and contents of his oral offers. Given the documentary nature of the evidence, we are as able as the trial court to conclude that a legally sufficient offer cannot be extracted from such unreliable testimony. *See Ploog v. Ogilvie,* 309 N.W.2d 49, 53 (Minn.1981).

■ Nor are we persuaded by State Farm's argument that Osterdyke cannot "rely" on the written offers because he cannot specifically remember reading them all the way through. A legally sufficient offer is required regardless of the insured's inclination or ability to read and understand it.

### DECISION

The trial court erred in finding State Farm made a legally sufficient offer of underinsured coverage to Osterdyke. We order judgment in favor of appellant declaring that his automobile insurance policies are reformed to include underinsured motorist coverage.

Reversed.