**Patrick PINNEY, Appellant,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Respondent.**

**No. CO–88–1621.**

Court of Appeals of Minnesota.

Jan. 31, 1989.

Review Denied April 24, 1989.

Sharon L. Van Dyck, Schwebel, Goetz & Sieben, Minneapolis, for appellant.

Suzanne M. Wolbeck, Stringer, Courtney & Rohleder, St. Paul, for respondent.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and FLEMING,* JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from a summary judgment. The trial court determined that the amount of underinsured coverage to be legally imposed due to respondent's failure to offer the same is $25,000 per policy. We reverse.

## FACTS

The facts giving rise to this lawsuit have been stipulated to by the parties. On November 2, 1979, appellant Patrick Pinney was seriously injured in an automobile accident by an underinsured motorist. At the time of the accident, Patrick was an in-

sured under two policies issued by State Farm to Robert Pinney, Patrick's father. The policies provided liability coverage with limits of 25/50/10 and uninsured and PIP coverage. However, neither policy issued to Robert Pinney contained underinsured motorist coverage. State Farm admits that it failed to offer Robert Pinney the mandated underinsured motorist benefits pursuant to law, and that those benefits are, therefore, to be read into the two policies. The trial court ruled that the amount of underinsured coverage to be read into the policies is $25,000 per policy. Because State Farm has paid appellant $50,000 in underinsured coverage, the trial court granted State Farm's motion for summary judgment.

## ISSUES

1. What is the proper amount of underinsured motorist coverage imposed by operation of law when an insurer fails to make a valid offer of underinsured motorist coverage pursuant to Minn.Stat. § 65B.49, subd. 6 (1978), and the insured's residual liability coverage does not exceed the minimum required by the statute?

2. Did State Farm fail to make an adequate offer of additional residual bodily liability coverage as required by Minn.Stat. § 65B.49, subd. 6 (1978)?

## ANALYSIS

■ 1. Under the Minnesota No-Fault Insurance Act as it existed in 1978, several types of minimum coverage were required by law in every insurance policy. *See* Minn.Stat. § 65B.49, subds. 1–5 (1978). Subdivision 3(1) required residual liability coverage at a minimum of $25,000/$50,000 for bodily injury. Robert Pinney's policies provided bodily injury liability coverage in these amounts. State Farm complied with subdivision 3(1).

Subdivision 6(c) required that an additional amount of residual bodily injury liability coverage at a minimum of $25,000/$50,000 be offered in excess of that already required under subdivision 3. Sub-

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

division 6(e) also required underinsured motorist coverage "in an amount at least equal to the insured's residual liability limits" to be made available.

■ Because State Farm admits that it failed to provide a statutorily sufficient offer of underinsured coverage to Robert Pinney, this court must now determine what minimum amount of underinsured coverage is available to Patrick under the statute. Where an insurer fails to establish that the mandatory offer of underinsured coverage was made, such coverage will be read into the contract by operation of law. *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244, 250 (Minn.1980). Only the statutory minimum coverage should be imposed. *Beukhof v. State Farm Automobile Insurance Co.*, 371 N.W.2d 538, 542 (Minn.1985).

Patrick argues that the term "residual liability limits" in subdivision 6(e) includes the $25,000 "residual liability" limits in subdivision 3(1), plus an additional $25,000 "residual bodily liability" limits in subdivision 6(c), for total underinsured coverage in the amount of $50,000. State Farm, on the other hand, claims that the term "residual bodily liability coverage" in subdivision 6(c) is wholly different from and cannot be equated with the term "residual liability" in subdivision 6(e). State Farm argues that a plain reading of subdivision 6(e) mandates that the minimum residual liability limit of $25,000 per person in subdivision 3(1) is the only underinsured coverage to be imposed by operation of law. The trial court agreed.

In *Holman*, where the insurer failed to offer statutorily required supplemental coverage as provided in section 65B.49, the court imposed underinsured coverage in the amount of $25,000 for residual liability under subdivision 3(1) *and* $25,000 for residual bodily liability coverage under subdivision 6(c), for total underinsured coverage in the amount of $50,000 per policy. *See Holman*, 288 N.W.2d at 252. State Farm dismisses the *Holman* formula as dictum, claiming that the issue of the minimum amount of underinsured coverage allowable under the act was not squarely before

the *Holman* court. We disagree. The supreme court's subsequent opinion in *Lewis v. Pennsylvania General Insurance Co.*, 391 N.W.2d 785 (Minn.1986) expressly reaffirms the *Holman* formula as "the proper calculation of the additional coverages required under subdivision 6 where an insurer has failed to make the mandatory offers of additional coverages." *Id.* at 789. *Lewis* confirms the fact that the term "residual bodily liability coverage" in subdivision 6(c) simply designates the subject matter of the liability coverage. The term does not, as State Farm contends, designate a different type of coverage than required under subdivision 3(1). Therefore, under the authority of *Holman* and *Lewis*, we hold that the sum of the coverages in subdivisions 3(1) and 6(c) ($50,000) equals the total "residual liability limits" referred to in subdivision 6(e).

Despite State Farm's contentions, this holding is fully consistent with other supreme court decisions in this area. In *Beukhof v. State Farm Automobile Insurance Co.*, 371 N.W.2d 538 (Minn.1985), the supreme court held that the statutory language, rather than the policy language in the insurer's standard underinsured motorist clause, was the relevant guide when determining the scope of implied-by-law underinsured coverage. *See id.* at 542; *see also Jablonski v. Mutual Service Casualty Insurance Co.*, 408 N.W.2d 854, 857 (Minn. 1987) (reaffirming *Beukhof* holding). Unlike the insured in *Beukhof*, who was not entitled to receive underinsured motorist benefits because his injuries were not caused by an automobile within the meaning of the insurance statute, Patrick clearly falls within the scope of underinsured coverage under the statute.

In *Osterdyke v. State Farm Mutual Automobile Insurance Co.*, 420 N.W.2d 900 (Minn.1988), the supreme court imposed underinsured coverage equal to Osterdyke's residual liability policy limits ($50,000), not the statutory minimum limits, where State Farm failed to make a mandatory offer of such coverage under subdivision 6(e). *Id.* at 903. However, unlike the residual liability coverage in Robert Pin-

ney's policy, Osterdyke's residual liability coverage exceeded the statutory minimum required by subdivision 3(1). The supreme court expressly pointed out Osterdyke's excess coverage in phrasing the issue before it. Consequently, *Osterdyke* is distinguishable from this case because Patrick's policy limits are the same as the statutory requirements. *See id.* at 901.

At first blush, *Dorn v. Liberty Mutual Fire Insurance Co.*, 401 N.W.2d 662 (Minn. 1987), seems to support State Farm's contention that the minimum residual liability limits of $25,000 per person in subdivision 3(1) is the only underinsured coverage to be imposed by operation of law. The insurer in *Dorn* changed the underinsured motorist coverage in its policies from $25,000 per person and $50,000 per accident to $60,000 per person/per accident. Although the policy change afforded $60,000 per person, it also limited the maximum insurance coverage for each accident to $60,000 and conceivably would have allowed a single victim to exhaust the policy limits. The supreme court found that the policy in *Dorn* violated the insurance statute and concluded the policy should be rewritten to afford the uncompensated plaintiff $25,000 in coverage, the minimum coverage available to any one victim under the statute. *See id.* at 664.

*Dorn* is distinguishable on its facts. Unlike this case, the insurer in *Dorn* did not fail to offer additional coverage; the primary issue in *Dorn* was how to rewrite an insurance policy which violated the statute. *See id.* We note that even though the *Dorn* case was decided less than six months before the court's decision in *Lewis v. Pennsylvania General Insurance Co.*, 391 N.W.2d 785 (Minn.1986), the *Lewis* opinion did not allude to *Dorn* and imposed the minimum statutory uninsured coverage of $50,000 per person per policy because the mandatory offer was not made. *See Lewis*, 391 N.W.2d at 790.

Because we hold that the statutory minimum amount of underinsured coverage to be imposed in this case is equal to the liability limits in subdivision 3(1) and subdivision 6(c), we must next determine whether State Farm made a legally sufficient offer of additional residual liability coverage to Robert Pinney.[1]

▮▮ 2. In *Hastings v. United Pacific Insurance Co.*, 318 N.W.2d 849 (Minn. 1982), the supreme court set forth four basic concerns relevant to determining compliance with the mandatory offer provisions in section 65B.49. They are:

1. The notification process must be commercially reasonable;

2. The insurer must specify the limits of optional coverage;

3. The insurer must intelligibly advise the insured of the nature of the optional coverage; and

4. The insurer must apprise the insured that optional coverages are available for a relatively modest increase in premiums.

*Id.* at 851–53; *see also Boldt v. State Farm Mutual Automobile Insurance Co.*, 345 N.W.2d 771, 772 (Minn.1984) (basic concern of mandatory offer statute is that insured be given enough information to make an intelligent decision about the optional coverages). State Farm has the burden of proving that a sufficient offer was made. *See Holman*, 288 N.W.2d at 248. However, Patrick only challenges State Farm's offer in respect to prongs three and four of the *Hastings* test.

▮ The third *Hastings'* requirement, that the insurer intelligibly advise the insured of the nature of the optional coverage, means that the offer must be sufficient to "enable the insured to assess why the offer should be carefully considered." *Hastings*, 318 N.W.2d at 852. The offer in *Hastings* failed this requirement because it simply listed underinsured motorist coverage as an available option, without any

---

**1.** Whether State Farm made a valid offer of additional residual bodily liability coverage is a legal conclusion which may be reached by this court on appeal, since State Farm's brochures are part of the documentary evidence contained in the record. *See Squier v. Milwaukee Mutual Insurance Co.*, 356 N.W.2d 832, 834 (Minn.Ct. App.1984), *pet. for rev. denied* (Minn. Feb. 6, 1985).

further explanation. *See id.* Likewise, in *Kuchenmeister v. Illinois Farmers Insurance Co.,* 310 N.W.2d 86 (Minn.1981), an offer was found deficient under *Hastings'* third requirement because the offer merely informed the insured of the availability of additional coverage and urged the insured to contact the company if interested. The *Kuchenmeister* court stated: "Perhaps in the broadest sense the message constituted an offer. It is, however, far from being a meaningful offer." *Id.* at 88; *see also Maher v. All Nation Insurance Co.,* 340 N.W.2d 675 (Minn.Ct.App.1983), *pet. for rev. denied* (Minn. Apr. 25, 1984) (offer for underinsured coverage insufficient where explanation or definition of same was lacking); *cf. League General Insurance Co. v. Tvedt,* 317 N.W.2d 40 (Minn.1982) (upholding offer that expressly urged serious consideration of optional liability packages, citing as reasons the increases in vehicle values and personal injury awards); *Erickson v. Allstate Insurance Co.,* 370 N.W.2d 427 (Minn.Ct.App.1985) (upholding offer that contained a straightforward statement of the way uninsured coverage is commonly interpreted; the offer also stressed the importance of additional coverage and gave reasons why it should be carefully considered).

In 1974 and 1975, State Farm mailed brochures to its insureds which contained information regarding the new Minnesota no-fault insurance act. The brochures listed the tort thresholds which, if met, allow an insured to be sued. The final page of the brochures also stated: "We strongly urge you to read this pamphlet and seriously consider the up-to-date coverage it describes." We find this language insufficient in light of the paucity of attention given to the need to obtain additional residual liability coverage in the brochures.

The brochures contained a chart allowing insureds to select specific types of optional coverage and there was a section in the brochure entitled "Optional Limits and Deductibles." However, the coverages set forth in the chart and the coverages mentioned under the "Optional Limits and Deductibles" section are PIP benefits and underinsured motorist coverage; nowhere in those sections of the brochures is liability coverage mentioned. Furthermore, the selection sheet for increased coverage entitled "Increased and Additional Limits Offer" refers solely to increased PIP coverage and underinsured motorist coverage. There is no selection box for increased liability limits.

The only specific attention given to additional liability coverage in the brochures was the language: "[liability] limits to $50,000/$100,000 or higher are available. If interested in higher limits, see your State Farm agent." This language alone is insufficient to have enabled Robert Pinney to assess why additional liability coverage should be carefully considered. *See Hastings,* 318 N.W.2d 849; *Kuchenmeister,* 310 N.W.2d 86.

*Hastings'* fourth requirement is that the insured be apprised that optional coverages are available for a relatively modest increase in premiums. State Farm cites the following language in its brochure as evidence that it satisfied this requirement.

Most policyholders will realize a premium savings even after selecting the important broader protection provided by the optional coverages.

Patrick claims that the language is lacking because it contains no mention of cost and because it does not specifically refer to liability coverage.

The rationale for the fourth requirement is that "even an insurance customer who asks for the minimum coverage might decide to buy additional coverage if told that the additional coverage could be had at a minimum cost." *Holman,* 288 N.W.2d at 250. The *Hastings* court found the cost requirement unfulfilled by an offer that simply stated that optional coverage "may be purchased." *Hastings,* 318 N.W.2d at 853. However, the court also noted that specific premium rate quotations are unnecessary where the insured is told that additional coverage is available for only a small increase in premiums. *Id.* (citing *Tvedt,* 317 N.W.2d at 42–43). Similarly, other courts have upheld the phrases "minimal cost," *Holman,* 288 N.W.2d at 250, "reasonable cost," *Squier v. Milwaukee Mutual Insurance Co.,* 356 N.W.2d 832 (Minn.Ct.App.1984), and "low cost," *Erick-*

*son,* 370 N.W.2d at 431, as satisfying *Hastings'* cost requirement. By comparison, the language used in State Farm's brochures did not adequately apprise Robert Pinney that additional coverages could be purchased at a relatively modest cost.

In *Squier,* we held that a cost reference to all types of optional coverage is adequate, even though premium costs will differ according to which coverage type is selected, where the brochure clearly lists and distinguishes the various options which are available and gives a brief explanation of what each option covers. *Squier,* 356 N.W.2d at 835. The *Squier* brochure listed the types of optional coverage available after indicating that such coverages were available at reasonable costs. *Id.* at 834. Unlike the *Squier* brochure, the structure of State Farm's brochures makes it difficult to discern that the reference to the affordability of additional coverage includes liability coverage. As noted previously, no mention of liability coverage was made in the brochure sections describing optional and additional coverage.

After carefully reviewing State Farm's brochures, we find that they do not constitute a sufficient offer of additional residual bodily liability coverage as required by Minn.Stat. § 65B.49, subd. 6(c) (1978).

### DECISION

The trial court's order granting summary judgment for State Farm is reversed. Under the authority of *Holman* and *Lewis,* the phrase "residual liability limits" in subdivision 6(e) includes $25,000 per subdivision 3(1) and $25,000 per subdivision 6(c), for a total of $50,000, $100,000 stacked. State Farm's offer of additional residual bodily liability coverage to Robert Pinney is legally insufficient under the *Hastings* test. Therefore, since State Farm has only paid appellant $50,000, we direct the trial court to order judgment in Patrick Pinney's favor in an additional sum of $50,000.

REVERSED.