Melvin S. BOROOS, Respondent,

v.

ROSEAU AGENCY, INC., Defendant,

State Farm Mutual Automobile Insurance Company, Respondent.

Home Insurance Company, Appellant.

and

Allen C. BOROOS and Joyce Boroos, Respondents,

v.

ROSEAU AGENCY, INC., Defendant,

Milbank Mutual Insurance Company, d.b.a. Milbank Mutual, Respondent,

Home Insurance Company, Appellant.

No. C8–83–1735.

Court of Appeals of Minnesota.

March 14, 1984.

Jeffrey R. Hannig, Moorhead, for appellant.

Roger C. Malm, Hallock, for respondent Melvin Boroos, and Allen and Joyce Boroos.

Anthony B. Mills, Moorhead, for respondent State Farm.

Lois J. Lang, Bemidji, for respondent Milbank Mut.

Considered and decided by FOLEY, P.J., and WOZNIAK, and SEDGWICK, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

These consolidated actions were brought by Melvin Boroos and Allen and Joyce Boroos against Roseau Agency, Inc., State Farm Mutual Insurance Company (State Farm), Milbank Mutual Insurance Company (Milbank), and The Home Insurance Company (The Home) in April 1982. Plaintiffs each sought a declaration of their rights to underinsured motorists coverage and in their suits against State Farm and Milbank, seek a reformation of their individual policies.

The Home filed cross claims against co-defendants State Farm and Milbank, personal insurers of Melvin Boroos and Allen Boroos respectively, alleging that State Farm and Milbank had failed to make an offer of underinsured motorists coverage to the plaintiffs as required by Minn.Stat. § 65B.49 (repealed 1980). Consequently, the Home alleged, State Farm and Milbank were obligated to extend coverage to the plaintiffs and share with The Home in payment of plaintiffs' claims. Roseau Agency was dismissed from the action.

State Farm and Milbank filed motions for summary judgment seeking dismissal of the cross claims. The district court denied the motions and determined that the coverage (if any) provided by State Farm and Milbank was secondary to that provided by The Home and would be determined after trial. The court granted plaintiffs' motion for summary judgment on the issue of priority of coverage and determined that *all* of the underinsured motorists coverage

under The Home's policy should be stacked.

We affirm.

## FACTS

The facts are not in dispute. On August 13, 1979, respondents were involved in a motor vehicle accident while occupying a vehicle owned by the County of Roseau and insured by The Home. The driver of the other vehicle, Craig Vacura, crossed the center line and hit the respondents head on. Vacura was insured under a policy with liability limits of $25,000 per person/$50,000 per accident. Both respondents have settled with Vacura's insurer for the limits of the policy. Both claim injuries in excess of those limits.

State Farm was Melvin Boroos's personal auto insurer at the time of the accident. His policy contained no underinsured motorists coverage. Milbank was Allen Boroos's personal auto insurer. His policy also did not provide coverage for underinsured motorists coverage. Roseau County's *39* vehicles were insured under a *single* policy by The Home; each had underinsured motorists coverage of $50,000. At the time of the accident, both Melvin Boroos and Allen Boroos were employees of Roseau County. Melvin was driving his employer's vehicle in the course and scope of his employment and Allen Boroos was riding as a passenger.

The Home's policy endorsement for underinsured motorists coverage included the following definition of insured: "anyone else occupying a covered auto * * *." The limits of liability are stated as follows:

> Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNDERINSURED MOTORISTS INSURANCE shown in this endorsement. *If there is more than one covered auto our limit of liability for any one accident is the sum of the limits applicable to each covered auto.* (emphasis supplied).

The district court interpreted this language to mean that The Home's policy contemplated stacking of the underinsured motorists coverage for all of the 39 vehicles covered under the policy. The trial court also determined that the intent to allow stacking of the coverage made The Home's policy primary under the doctrine of "closeness to the risk." As a result, the district court found The Home liable to the respondents as "insureds" up to the limit of $1,950,000, and found State Farm and Milbank only secondarily liable, if at all, subject to evidence at trial.

## ISSUES

1. Did the trial court err in interpreting the language of The Home's policy to allow stacking of the underinsured motorists coverage on all of the listed Roseau County vehicles?

2. Did the trial court err in determining that The Home's total coverage should be primary and the personal auto insurers' coverage (if any) secondary?

## ANALYSIS

■■■ 1. The Home's policy provision with respect to limits of liability is ambiguous. A reading of the policy leaves one confused as to what coverage is or is not provided. Minnesota embraces a strong policy of extending coverage rather than allowing it to be restricted by ambiguous or confusing language. *Hennen v. St. Paul Mercury Insurance Co.*, 312 Minn. 131, 250 N.W.2d 840 (1977); *Hammer v. Malkerson*, 269 Minn. 563, 132 N.W.2d 174 (1964). Policies are to be construed against the insurance company which drafted the policy, and in favor of the insured. *Canadian Universal Insurance Co. v. Fire Watch, Inc.*, 258 N.W.2d 570 (Minn.1977); *Olson v. Blue Cross & Blue Shield*, 269 N.W.2d 697 (Minn.1978).

The trial court's interpretation that the language "If there is more than one covered auto our limit of liability for any one accident is the sum of the limits applicable to each covered auto" reflected an intent by The Home to provide coverage up to the limits on *all* covered autos, is consistent with Minnesota public policy.

■■ 2. The procedure for determining priority of coverage when more than one insurer may be liable was set forth most cogently in *Integrity Mutual Insurance Co. v. State Automobile & Casualty Underwriters Insurance Co.*, 307 Minn. 173, 239 N.W.2d 445 (1976). The court held: The Minnesota approach is—

to allocate respective policy coverages in light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy.

*Id.* at 175, 239 N.W.2d at 446. Further, the court stated:

The nub of the Minnesota doctrine is that coverages of a given risk shall be "stacked" for payment in the order of their closeness to the risk. That is, the insurer whose coverage was effected for the primary purpose of insuring that risk will be liable first for payment, and the insurer whose coverage of the risk was the most incidental to the basic purpose of its insuring intent will be liable last.

*Id.*

In *Integrity*, Kenneth Rechtzigel was fatally injured while occupying a car owned and insured by his father, Anton Rechtzigel. Anton Rechtzigel owned two automobiles, both of which were covered under the same policy. Kenneth Rechtzigel owned three vehicles, all insured under a single policy. The court determined that the coverage of the involved vehicle was primary because most closely related to the risk. The next closest coverages were those covering Kenneth Rechtzigel's three cars because that policy contemplated coverage for Kenneth while driving another vehicle as incidental to its main coverage. The coverage on Anton Rechtzigel's uninvolved vehicle was held to be furthest from the risk and therefore the last coverage to be subject to payment. *Id.* at 179, 239 N.W.2d at 448. *See also Hennekens v. All Nation Insurance Co.*, 295 N.W.2d 84 (Minn.1980).

At first view it would appear that *Integrity* mandates that the order of liability be as follows: 1) The Home for the first $50,-

000 covering the involved vehicle, 2) State Farm and Milbank to their policy limits, and 3) The Home for the remainder up to its total policy limits.

Despite the similarity of the two cases, however, the difference lies in the "total policy insuring intent" of the policies. Because The Home's policy is ambiguous, we construe the policy against the insurer and hold that stacked coverage is provided by The Home policy which is "closest to the risk."

Appellant, The Home, argues that this case is controlled by *Doerner v. State Farm Mutual Automobile Insurance Co.,* 337 N.W.2d 394 (Minn.1983). In *Doerner,* the Minnesota Supreme Court held:

> We hold that the occupants of an insured motor vehicle involved in an accident, who have uninsured motorists coverage solely because of their status as passengers, may not stack the underinsured motorist coverage under a separate policy of insurance purchased by the owner of the involved vehicle for a non-involved vehicle unless they qualify as insureds under that policy.

*Id.* at 396.

*Doerner* does not apply to this case for several reasons: In *Doerner* there were two separate policies involved. The plaintiffs were not insureds under the second policy and there were no premiums paid for their benefit. Here, there is but *one* policy covering *all* of the county vehicles. Respondents' occupancy of the involved vehicle brings them within the policy definition of *insured.* The county has paid separate premiums on each of its 39 vehicles for the benefit of its employees. (We believe that *Wakefield v. Federated Mutual Ins. Co.,* 344 N.W.2d 849 (Minn.1984), is factually and legally distinguishable from the case at bar and does not control decision.)

## DECISION

The trial court's interpretation of the policy and determination of priority of coverage was correct.

Affirmed and, as affirmed, remanded for trial on all remaining issues.