Andrew **RUSTHOVEN, Jr., Appellant (C5–84–1329), Respondent (C0–84–1433)**

v.

**COMMERCIAL STANDARD INSURANCE COMPANY, Respondent,**

**Western National Mutual Insurance Company, Respondent (C5–84–1329), Appellant (C0–84–1433).**

**Nos. C5–84–1329, C0–84–1433.**

Court of Appeals of Minnesota.

Feb. 26, 1985.

Review Granted May 1, 1985.

John Kallestad, Willmar, for Andrew Rusthoven, Jr.

Theodore J. Smetak, Minneapolis, for Commercial Standard Ins. Co.

Bruce D. Elliott, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, for Western Nat. Mut. Ins. Co.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Rusthoven and Western National Mutual Insurance Company (Western) appeal from a judgment declaring that $25,000 is the maximum amount of uninsured motorist coverage available to Rusthoven under respondent Commercial Standard's trucker's policy. The appeals were consolidated by order of this court. We affirm.

## FACTS

On March 8, 1981, appellant Andrew Rusthoven was injured while driving a truck under a long term lease to RETENO Carriers, Incorporated. Respondent Commercial Standard Insurance Company insured RETENO Carriers' 67 vehicles under a trucker's policy. The policy provided for a single premium of $15,000.00 based upon gross receipts of RETENO Carriers, Inc. as defined in the policy.

At the time of the accident, Rusthoven was the named insured in a policy issued by Western which provided $25,000 of uninsured motorist coverage on each of three vehicles he owned. On the morning of trial, Western stipulated that judgment in the amount of $75,000.00 (the limits of its policy) could be taken against it. Judgment was ordered accordingly. Western claims a subrogation interest in this amount.

Rusthoven's action is against both Commercial Standard and Western for uninsured motorist coverage. Commercial Standard paid Rusthoven $25,000.00, the limit of uninsured motorist coverage on the vehicle involved in the accident and contends the uninsured motorist coverage on the 66 uninvolved vehicles could not be stacked. Appellants contend the Commercial Standard policy contained conflicting endorsements permitting stacking on the additional 66 vehicles leased to RETENO Carriers, Inc.

## ISSUE

Did the trial court err in ruling that uninsured motorist coverage could not be stacked under the insurance policy issued by Commercial Standard to Rusthoven's employer?

## ANALYSIS

The declaration sheet of the Commercial Standard policy has four columns, including a column indicating the coverages provided in the policy. One line in the coverage column specifies uninsured motorists coverage as a coverage provided in the policy. Also on that line but across in a different column designated "LIMIT: THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS" is the notation "See Endorsement CA 2107." Endorsement CA2107 is attached to the policy and limits uninsured motorist coverage for bodily injury to $25,000 per person and $50,000 per accident. It provides in part:

| Bodily Injury | $25,000 | Each Person |
| | $50,000 | Each Accident |
| Property Damage | $ | Each Accident |

Paragraph 1 of our limit of liability is changed to read:

1. Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, our limit of liability is as follows:

   a. The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit shown in this endorsement for 'each person.'

   b. Subject of the limit for 'each person,' the most we will pay for all damages resulting from bodily injury caused by any one accident is the limit shown in this endorsement for 'each accident.'

Despite this clear prohibition of stacking, Western and Rusthoven contend the policy is ambiguous. They refer to Endorsement CA2124, also noted on the declaration sheet, but instead listed with 16 other endorsements. That list is generally designated as "Terms and Endorsements contained in this policy at its inception." CA2124 provides in part:

Changes in Uninsured Motorist Insurance:

B. Paragraph 1 of our limit of liability is changed to read:

   1. Regardless of the number of insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of uninsured motorist insurance shown in the declarations. If there is more than one covered auto our limit for liability for any one accident is the sum of the limits applicable to each covered auto.

Western contends that endorsement CA2124, if not unequivocally providing for stacking, creates an ambiguity. Western relies upon cases holding that an ambiguity must be construed in favor of increasing coverage by allowing stacking, including *Boroos v. Roseau Agency, Inc.*, 345 N.W.2d 788, 790 (Minn.Ct.App.1984). We disagree with Western and agree with the trial court that the only reasonable interpretation of this policy prohibits stacking.

An ambiguity is created only when there are two or more reasonable interpretations. *Farmers Home Mutual Insurance Co. v. Lill,* 332 N.W.2d 635, 637 (Minn.1983). The face of the declaration sheet directs its reader to endorsement CA2107 for the limits of uninsured motorist coverage Endorsement CA2107 clearly prohibits stacking, leaving no room for doubt on its meaning. Even though endorsement CA2124 can be read to allow stacking, the manifest intent of the parties is to limit coverage to $25,000 for bodily injury per person and $50,000 per accident. Western's contention that the endorsement allows stacking of all 67 vehicles to create $1,675,000 in bodily injury coverage is untenable.

The *Boroos* case relied upon by Western differs from this case. In *Boroos* this court found the following two consecutive sentences in an endorsement created an ambiguity:

Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of UNDERINSURED MOTORIST INSURANCE shown in this endorsement. If there is more than one covered auto, our limit of liability for any one accident is the sum of the limits applicable to each covered auto.

*Boroos*, 345 N.W.2d at 789 (emphasis omitted). Relying in part upon the policy's separate premium calculation for underinsured motorist coverage for each of 37 vehicles, this court in *Boroos* found the intent of the parties to allow stacking as shown by the policy terms was unclear. Under the rule favoring extending rather than limiting coverage, we allowed stacking.

The Commercial Standard policy, however, bases uninsured motorist coverage on RETENO Carriers' gross receipts. Premiums are not separately calculated as they were in *Boroos*. The Commercial Standard

policy is similar to the policy in *Yeager v. Auto-Owners Insurance Co.*, 335 N.W.2d 733 (Minn.1983) where the supreme court denied stacking in part because the policy's coverage did not reflect separate coverages for the risk involved. Thus, as in *Yeager*, the insurer will not receive a windfall if stacking is not allowed.

## DECISION

We affirm the trial court's holding that the only reasonable interpretation of the policy prohibits stacking. We do not reach the issue of which insurance policy is closer to the risk.

SEDGWICK, J., dissents.

SEDGWICK, Judge (dissenting).

I respectfully dissent. The Commercial Standard Insurance Company policy issued to Rusthoven contained two conflicting provisions. One permits stacking and one does not. This creates an ambiguity.

It is well settled that ambiguities in the language of an insurance policy should be construed against the insurer as drafter of the policy. It is also well settled that policy provisions are to be interpreted in accord with what a reasonable person in the position of the insured would have understood the terms to mean. *Farmers Home Mutual Insurance Co. v. Lill*, 332 N.W.2d 635 (Minn.1983).

Commercial Standard argues that if there is an ambiguity, the only reasonable way to read the policy is to first read the endorsement which precludes stacking the policies, then disregard the endorsement which allows for stacking of uninsured motorist benefits.

This argument is unreasonable. Any reasonable person named as an insured in a policy will read the entire policy to see if the policy provisions allow for a complete satisfaction of claims.

In *Boroos v. Roseau Agency, Inc.*, 345 N.W.2d 788 (Minn.Ct.App.1984), this court allowed the stacking of uninsured motorist benefits. In that case the policy contained only one endorsement relating to uninsured motorist limits which used language similar to the provision allowing stacking here.

The trial court interpreted that language to mean the insurance company intended to provide coverage up to the limits on all covered autos. The court found this consistent with Minnesota public policy.

Commercial Standard argues *Boroos* is distinguishable because here there was only one premium paid for uninsured motorist coverage based on gross receipts of the leasing business. In *Boroos* if optional uninsured motorist coverage had been offered by the insurer as required by law, the insurer would have based the premium for that coverage on a per-vehicle cost.

This difference in premium computation is irrelevant once it is established that the Commercial Standard policy, by its own terms, provides for stacking of uninsured motorist coverage.

Therefore, the trial court erred in ruling that Commercial Standard's underinsured motorist benefits could not be stacked.