**Ruth Adeline LEWIS, et al.,**
**Respondents,**

v.

**PENNSYLVANIA GENERAL**
**INSURANCE COMPANY,**
**Appellant,**

**Phylis McCallum, Respondent.**

**No. C8–85–7.**

Court of Appeals of Minnesota.

July 23, 1985.

Review Granted Sept. 30, 1985.

ion. *Palma v. State Farm Fire & Casualty Co.,* 15th Judicial Circuit of Florida, Case No. 83–    4113 CA(L) 01 E.

Harry A. Sieben, Jr., Minneapolis, for respondents.

Richard P. Mahoney, Minneapolis, for appellant.

Mark A. Hallberg, Minneapolis, for Phylis McCallum.

Heard, considered and decided by SEDGWICK, P.J., and WOZNIAK and RANDALL, JJ.

## OPINION

SEDGWICK, Judge.

This appeal is from a judgment entered October 3, 1984. The trial court determined that appellant Pennsylvania General Insurance Co. had failed to make an adequate offer of optional bodily injury and uninsured motorist coverage to respondents. We affirm.

## FACTS

Respondent Phylis McCallum was a passenger in a car owned and driven by respondent Ruth Lewis. On February 21, 1980 the women were traveling west on Broadway Avenue in northeast Minneapolis when an unidentified truck suddenly changed lanes and forced them across the center line causing a collision with oncoming traffic. Both women sustained severe injuries.

At the time of the accident, Mrs. Lewis was insured by appellant Pennsylvania General Insurance Company (Penn General). The policy covering the automobile involved in the accident provided $60,000 in combined property and liability coverage and $50,000 in uninsured and underinsured motorist coverage.

*Facts Relating to Coverage*

A. Conversations between Mr. Lewis and his insurance agent.

On December 1, 1978 respondent Robert Lewis called the Leitschuh Insurance Agency to inquire about automobile insurance. Lewis had been insured with Gambles Insurance but was forced to locate a new company when Gambles decided to discontinue writing automobile insurance policies. Mr. Lewis arranged to meet agent Vic Leitschuh after normal business hours.

The two men met in Leitschuh's office for approximately 10 to 15 minutes. Lewis told Leitschuh that he wanted policy limits similar to those in his Gambles policy. As a result, the Lewises were issued a policy of insurance providing liability coverage with limits of 25/50/10 and uninsured and underinsured coverage with limits of 25/50. Mr. Lewis recalls no conversations with Leitschuh about additional or optional limits available for liability, uninsured or underinsured coverage. Although Leitschuh could not specifically recall whether he mentioned the optional coverages to Mr. Lewis, it is his custom and practice to discuss such coverage with his prospective customers.

In 1979 Lewis and Leitschuh had one other meeting. There was no discussion of optional coverages at that meeting.

B. Mailings from Penn General

On October 18, 1979, appellant Penn General sent a mass mailing to all its insureds, received by Lewis, which included a letter to the policy holder, a document entitled "Minnesota Automobile Ins. Options Selection Form Underinsured Motorist Coverage (UIM) and No-Fault Benefits" and a copy of the company's new easy read policy with

accompanying policy renewal certificate. The purpose of the mailings was to inform Penn General's policyholders of the upcoming conversion of all split limit policies to single limit policies. (For the Lewises this meant their policy of 25/50/10 was converted to a single limit of $60,000).

The options selection form did not explain uninsured coverage, or give any estimate of premium costs or information advising that higher coverage limits were available for a minimal cost. The policy renewal certificate included in the mailings showed the minimal increase in uninsured coverage under the single limit policy. However, it did not indicate the nature of uninsured coverage or that additional uninsured coverage could be obtained.

Arbitration was held to address the issues of liability, damages and coverage. The arbitrators found that appellant failed to make an adequate offer either through its agent or by its mass mailings of optional uninsured coverage to the Lewises. The arbitrators further found that as a result of Penn General's failure to make an adequate offer, the applicable limit of uninsured coverage for each of the two vehicles owned by the Lewises was $100,000.

Appellant moved to vacate the arbitration award. The motion was denied without prejudice, pending trial.

Following trial the court found that appellant failed to make an adequate offer of optional coverage to Lewis and as a result the limit implied by law for each vehicle was $100,000.

## ISSUES

1. Did the insurer fail to make an adequate offer of additional uninsured motorist coverage as required by Minn.Stat. § 65B.49, subd. 6 (1978)?

2. Assuming insurer failed to make an adequate offer of additional coverage what policy limits should be implied by law as of the date of the accident?

3. Did the trial court err in its denial of appellant's motion to reopen the record for purposes of receiving additional testimony?

## ANALYSIS

1. (a) Conversations between Mr. Lewis and his insurance agent.

Minn.Stat. § 65B.49, subd. 6 (1978), repealed in 1980, required insurers to offer optional coverages, including additional liability protection and uninsured motorist coverage at least equal to the insured's residual liability limits. At the time of the accident, and in December of 1978 when the Lewises first became insured with appellant Penn General, Minn.Stat. § 65B.49, subd. 6, provided in pertinent part:

(6) Mandatory offer. Reparation obligors shall offer the following optional coverages in addition to compulsory coverages:

*     *     *     *     *     *

(c) Residual bodily liability coverage of not less than $25,000 for damages for injury to one person in any one accident arising out of the maintenance or use of a motor vehicle, subject to a limitation of $50,000 for damages arising out of any one accident;

(f) Uninsured motorist coverage in addition to the minimum limits specified in subdivision 4, so as to provide total limits of uninsured motorist coverage equal to the residual bodily injury liability limits of the policy, or smaller limits as the insured may select. This coverage may be offered in combination with the coverage under clause (e).

The trial court found that Penn General's independent agent, Leitschuh, had not afforded optional coverages to Robert Lewis. The court's findings of fact will not be reversed on appeal unless they are clearly erroneous. Minn.R.Civ.P. 52.01. *Van Overbeke v. State Farm Mutual Auto Insurance Co.*, 303 Minn. 387, 227 N.W.2d 807 (1975).

Minnesota case law is clear. The offer of optional coverages can be made either in writing or orally, but the burden of proving the offer and its adequacy is on the insurer. *See Holman and All Nation Insurance Co.*, 288 N.W.2d 244, 249 (Minn.

1980). The insured must be given "enough information to make an intelligent decision about optional coverages." *League General Insurance Co. v. Tvedt,* 317 N.W.2d 40, 42 (Minn.1982). Four factors are used to examine the adequacy of a mandatory offer. They are that the insurer specify the limits of optional coverages; that it "intelligibly advise the insured of the nature of the optional coverage"; "that the insured be apprised that optional coverages are available for a relatively modest increase in premiums; and, finally, that the offer be made in a 'commercially reasonable manner'." *Hastings v. United Pacific Insurance Co.,* 318 N.W.2d 849 (Minn.1982).

Here, more than six years after coverage was purchased and with the matter in litigation, the agent and the customer each recalls what happened differently. Both testified that on December 1, 1978, they met in Vic Leitschuh's office to discuss insurance needs after Lewis first called Leitschuh about transfering auto insurance policies to the insurance company he represented. At the arbitration hearing two years prior to trial, Leitschuh had no recollection of his December meeting with Lewis. He did testify, however, that "most often" his custom and practice is to explain the various coverages and their cost each time he meets with a prospective customer. At trial Leitschuh specifically remembered the conversation he had with Lewis. He testified that he discussed with Lewis the nature of uninsured motorist coverage and costs incurred in purchasing additional insurance.

Lewis testified at both the arbitration hearing and trial that during his personal meeting with Leitschuh he was never offered additional or optional limits nor was he given any explanation of the various coverages included in the policy he planned to purchase from Penn General. Although he intended to purchase policy limits identical to the Gambles policy Lewis testified that had Leitschuh informed him of the optional coverages he would have considered them if the premiums were not unreasonable.

██ Assuming Leitschuh's recollection of what he offered Lewis was accurate, the offer was valid under *Hastings.* The question remains, however, whether the offer was really made. This was a fact issue for the trial court to resolve. Based on this record the trial court's assessment of the evidence is not "clearly erroneous".

██ Appellant argues Lewis waived the statutory protection of optional coverages by insisting on a similar policy to the one he previously had. It relies on *Boldt v. State Farm Insurance Co.,* 345 N.W.2d 771 (Minn.1984). In *Boldt,* the supreme court relieved an insurer of the statutory obligation of offering optional coverages where a prospective insured interrupted the insurer's explanation and repeatedly and adamantly designated the type of coverage he wanted. Here there is no such conduct on the part of Lewis. His primary concern in seeking coverage similar to his previous policy was minimal cost. As noted by the *Holman* court, it is characteristic of insurance customers to spend as little as possible. However, that fact alone does not establish that an insured has declined optional coverages. 288 N.W.2d at 250.

(b) Mailings sent by appellant Penn General

██ Appellant next argues the policy renewal certificate letter and accompanying options selection form sent by it to Lewis on October 17, 1979 satisfied the "meaningful offer" requirement of Minn. Stat. § 65B.49, subd. 6. Once again *Hastings* supplies the relevant factors. Whether an adequate offer has been made is usually a fact issue for the trial court to decide. *Yeager v. Auto-Owners Insurance Co.,* 335 N.W.2d 733, 736 (Minn.1983). However, this case involves the meaning of documentary evidence. Whether or not a valid offer of optional coverages was included in appellant's mailings is a legal conclusion which may be determined by this court on appeal, since all evidence is contained in the documents themselves. *Squier v. Milwaukee Mutual Insurance Co.,* 356 N.W.2d 832 (Minn.Ct.App.1984).

The parties agree that the mailings were made in a "commercially reasonable" manner. They dispute whether the mailings satisfy the remaining conditions of *Hastings*. Respondents claim three deficiencies in the information sent by Penn General to its insureds: (1) Nothing in the mailings explains uninsured motorist coverage. While the options form gives a cursory explanation of underinsured coverage, uninsured coverage is not explained; (2) A fair reading of the mailings suggests that additional limits for uninsured and underinsured motorist coverages are only available to the extent of the insured's existing liability limits. However, the mailings make no offer of additional liability coverage. Thus, an insured could reasonably conclude that optional coverages were not available over and above his existing residual liability limits; (3) There is nothing in the mailing about cost.

Appellant argues that the options selection form cannot be considered alone. When read in combination with the policy renewal certificate the statutory requirement as interpreted by *Hastings* is met. This argument is not persuasive. Although premium rates for uninsured coverage were broken down for each car owned by the Lewises in the policy renewal certificate, no mention is made of obtaining additional liability coverage in either the policy certificate or the options form. It is simply not clear from either mailing the nature of uninsured coverage or the extra cost required to obtain additional optional coverages.

2. The trial court correctly determined that as a consequence of Penn General's failure to make an adequate offer of uninsured motorist coverage the original limits of uninsured coverage purchased by the Lewises would be reformed to provide $100,000 for each vehicle they owned.[1]

3. Appellant's motion to reopen the record for additional testimony of Lewis' coverage with his previous insurer was properly dismissed. Appellant had four years to locate this information before trial.

 The trial court action will not be disturbed on appeal absent a clear abuse of that discretion. *Hamilton v. Killian*, 296 Minn. 256, 207 N.W.2d 703 (1973). Coverage held with a previous insurer has no bearing on whether Penn General made a meaningful offer of additional uninsured motorist coverage.

## DECISION

Affirmed.

---

1. The same result is reached under the single limit coverage issued by Penn General. Assuming the Lewises had coverage of 50/100 (25/50 coverage as written on the date of the accident plus an additional 25/50 BI coverage imposed on the policy under 65B.49, subd. 6(c)) as a result of the coverages implied at law on December 1, 1979, when the policy converted to single limit coverages, each 50/100 policy would have converted to a $100,000 single limit uninsured policy. Therefore, as of the date of the accident, there would have been $100,000 in uninsured coverage per vehicle, in the form of single limit coverage.