**Ruth Adeline LEWIS, et al.,
Respondents,**

v.

**PENNSYLVANIA GENERAL
INSURANCE COMPANY,
Appellant,**

**Phyllis McCallum, Respondent.**

No. C8–85–7.

Supreme Court of Minnesota.

Aug. 8, 1986.

Richard P. Mahoney, Minneapolis, for appellant.

Mark A. Hallberg, Harry Sieben, Minneapolis, for respondents.

WAHL, Justice.

This case raises the issue of what policy liability limits will be implied by law to determine Pennsylvania General Insurance Company's (Penn General) uninsured motorist liability under Minn.Stat. § 65B.49, subd. 6(f) (1978).[1] An arbitration panel held Penn General liable for $200,000 in uninsured motorist liability under subdivision 6(f). The Hennepin County District Court affirmed this award on respondents' motion to confirm the arbitrators' award under Minn.Stat. § 572.18 (1984). On appeal, the Court of Appeals upheld the trial court's affirmance, 371 N.W.2d 577. We granted review and affirm as modified the decision of the Court of Appeals.[2]

---

**1.** Subdivision 6 of section 65B.49 was repealed by the legislature in 1980. *See* Act of April 11, 1980, ch. 539, § 7, 1980 Minn. Laws 702.

**2.** The proper calculation of uninsured motorist coverage was not the only issue considered and decided by the lower courts and the arbitration panel in this case. They also considered whether Penn General had failed to make mandatory offers of additional coverage under Minn.Stat. § 65B.49, subd. 6 (1978), and the extent of respondents' damages. These issues, however, are not presented to us on appeal. The Court of Appeals decision is therefore dispositive of those issues.

On February 21, 1980, respondents Ruth Lewis and Phyllis McCallum were seriously injured when the automobile which Lewis was driving swerved to miss an unidentified vehicle and collided head-on with another automobile. Lewis and her husband owned the automobile Lewis was driving. McCallum was a passenger in the Lewis vehicle and is not related to the Lewises.

The automobile involved in the accident, and another automobile owned by the Lewises, were covered by a single insurance policy issued by Penn General. The policy was originally issued on December 1, 1978, at which time the mandatory offer of additional uninsured motorist coverage under Minn.Stat. § 65B.49, subd. 6(f), was in effect. As originally issued, the policy included bodily injury liability limits of $25,000/50,000 as required by Minn.Stat. § 65B.49, subd. 3 (1978). It also included mandatory uninsured motorist coverage of $25,000/50,000 as required by Minn.Stat. § 65B.49, subd. 4 (1978). This policy ran from December 1, 1978, to June 1, 1979. The same limits were renewed from June 1, 1979, to December 1, 1979.

Between June 1, 1979, and December 1, 1979, Penn General altered the way in which it offered its liability limits. Instead of offering split liability limits (e.g. 25,000 per person/50,000 per accident), it offered a single liability limit (e.g. 100,000 per accident). The company offered each of its insureds a set amount of total bodily injury liability coverage based on the insured's current limits. For insureds with current split coverage of $25,000/50,000, the company offered a single limit policy of $60,000. For insureds with current split cover-

age of $50,000/100,000, the company offered a single limit policy of $100,000.

Penn General made an offer of single liability limit coverage to the Lewises in October of 1979. An insurance options selection form sent by Penn General allowed the Lewises to substitute their $25,000/50,000 liability limits for a single liability limit of $60,000. The Lewises paid for the $60,000 bodily injury liability coverage and also paid for mandatory uninsured motorist coverage of $50,000.

After the accident in 1980, Penn General admitted uninsured motorist coverage of $50,000 under the single limit policy in force at the time of the accident. Because two Lewis automobiles were covered under the policy, Penn General conceded liability coverage of $100,000 after stacking.[3] Respondents, however, challenged this result arguing that Penn General had failed to make mandatory offers of additional coverage under Minn.Stat. § 65B.49, subd. 6. Because of this failure, respondents asserted, an additional amount of uninsured motorist coverage should be implied by law in each policy.

The parties submitted the dispute to arbitration. The arbitration panel considered whether Penn General had failed to make the mandatory offers of additional insurance under subdivision 6. The panel ruled that Penn General had failed to offer the Lewises additional residual bodily injury liability coverage under Minn.Stat. § 65B.49, subd. 6(c) (1978)[4] or underinsured and uninsured motorist coverages under Minn.Stat. § 65B.49, subd. 6(e)–(f) (1978).[5] Because the offers had not been made, the panel imposed additional residual

3. Penn General escrowed the $100,000 pending the outcome of litigation. This amount has been paid out to respondents Lewis and McCallum according to the percentages established by the arbitration panel. *See infra* notes 7–8.

4. Minn.Stat. § 65B.49, subd. 6(c) (1978) required that an insurer offer "residual bodily injury liability coverage" in excess of the minimum required by law in every automobile insurance policy under Minn.Stat. § 65B.49, subd. 3 (1978). Subdivision 3 required that, at a minimum, every automobile insurance policy include bodily injury liability limits of $25,-

000/50,000. *Id.* Subdivision 6(c) required that an insurer offer an additional $25,000/50,000 of bodily injury liability coverage beyond that mandated by subdivision 3. *Id.*, subd. 6(c).

5. Minn.Stat. § 65B.49, subd. 6(e), required that underinsured motorist coverage be offered to an insured "in an amount at least equal to the insured's residual liability limits * * *." Similarly, Minn.Stat. § 65B.49, subd. 6(f), required that uninsured motorist coverage be offered "in addition to the minimum limits specified in subdivision 4, so as to provide total limits * * *

bodily injury liability coverage and uninsured motorist coverage upon the Lewis policy.[6] In doing so, however, the panel adopted the bodily injury liability limits of the original policy in effect on December 1, 1978 ($25,000/$50,000), rather than the single liability limits in effect at the time of the accident, as the proper policy limits on which to impose the additional coverages. The panel added to these $25,000/$50,000 limits additional coverage of $25,000/$50,000, under the assumption that had Penn General originally offered additional coverage under subdivision 6, the Lewises would have elected to purchase coverage at limits of $50,000/$100,000. The panel then concluded that because the Lewises would have originally had split liability limits of $50,000/$100,000 before single limits were imposed, the company would have changed those $50,000/$100,000 split limits to a single limit of $100,000 in December of 1979. The panel therefore imposed uninsured motorist coverage under subdivision 6(f) in the amount of $100,000—the policy's "residual bodily injury liability" limits per automobile as interpreted by the panel. The panel allowed both Mrs. Lewis and Mrs. McCallum to stack this coverage for a total of $200,000.[7]

Penn General moved to vacate the arbitration award pursuant to Minn.Stat. § 572.19 (1984). Respondents moved to confirm the award under Minn.Stat. § 572.18 (1984). After a one-day hearing, the district court ruled in favor of respondents, upholding the arbitrators' decision. The court agreed with the arbitrators that Penn General had not made the mandatory offers of additional coverage required by subdivision 6. The court also agreed that the proper policy limits to apply in this case for the purpose of determining uninsured motorist coverage were those of the policy originally purchased by the Lewises in December 1978. The court then imposed uninsured motorist coverage based on the following analysis:

Had the offer of additional coverage been made in December 1978 or even through the mailing in 1979, the Lewises may have increased their coverage to $50,000/100,000 prior to the switch to single limit policies. Since the offer was never adequately made, the Lewis' [sic] coverage must be increased by the additional $25,000/50,000. Further, since the insurance company switched to single-limit [sic] policies in 1979, the Lewis' [sic] policy, in turn, becomes a single-limit [sic] $100,000 policy.

The court therefore held Penn General liable for $100,000 in uninsured motorist coverage, stackable to a total of $200,000. The court reversed the arbitrators' decision, however, on the issue of Mrs. McCallum's ability to stack benefits. Only Mrs. Lewis was allowed to stack.[8]

The Court of Appeals affirmed the calculation of uninsured motorist benefits made by the arbitrators and the district court. The court upheld the award of $200,000. *See Lewis v. Pennsylvania General Insurance Co.*, 371 N.W.2d 577 (Minn.App.1985).

### I.

We must initially determine at what point in time the implied in law coverage

---

equal to the residual bodily injury liability limits of the policy * * *."

6. Underinsured motorist coverage was not imposed upon the policy by the arbitration panel. The panel reasoned that "the unidentified motor vehicle cannot have the dual status of [being both] an uninsured and underinsured motor vehicle." This determination of the panel was not challenged on appeal to district court.

7. In addition, the arbitration panel determined that Mrs. Lewis' damages amounted to $212,500; Mrs. McCallum's damages were determined to be $270,000. The panel awarded each claimant a part of the $200,000 in uninsured motorist coverage based upon the percentage of the total damages incurred by each. Mrs. Lewis was awarded 36% of the uninsured motorist coverage and Mrs. McCallum was awarded 64%.

8. The court also upheld the arbitrators' apportionment of damages between Mrs. Lewis and Mrs. McCallum. It awarded Mrs. McCallum 64% of the $100,000 of uninsured motorist coverage available on the vehicle involved in the accident. It awarded Mrs. Lewis 36% of the same $100,000, and also allowed her to stack an additional $100,000 from the second Lewis automobile. This apportionment was not challenged on appeal.

required by Minn.Stat. § 65B.49, subd. 6(f) is to be read into the policy—at the time the original policy was issued without the mandatory offer or at the time of the accident. The original policy included bodily injury liability coverage of $25,000/$50,000 as required by Minn.Stat. § 65B.49, subd. 3, and mandatory uninsured motorist coverage of $25,000/$50,000 as required by Minn.Stat. § 65B.49, subd. 4. The policy in effect at the time of the accident, however, included a single bodily injury liability limit of $60,000 per vehicle for each accident and a single mandatory uninsured motorist limit of $50,000 per vehicle for each accident.

Respondents argue that the additional uninsured motorist coverage should be implied in the original policy. Penn General disputes this, contending that the implied coverage should be read into the policy in effect at the time of the accident. Both parties rely on the same language from our decision in *Kuchenmeister v. Illinois Farmers Insurance Co.*, 310 N.W.2d 86, 88–89 (Minn.1981), where we held that when an insurer fails to make the mandatory offers of additional coverages under subdivision 6, "[the additional] coverage is implied in law as included in the insured's policy at the time of the accident." The confusion in this case centers around the proper meaning of this phrase. Respondents adopt the district court's analysis. They argue that *Kuchenmeister* requires us to imply the additional coverage into the original policy and include that coverage in the policy in effect at the time of the accident. Penn General argues this language requires us to imply and include the additional coverage into the policy in effect at the time of the accident.

▪ *Kuchenmeister* controls this case. *Kuchenmeister* requires that the coverage implied by law is to be read into the insured's policy in effect at the time of the accident. We hold that the additional coverage required in this case by section 65B.49, subdivision 6 should be read into the policy in effect at the time of the accident.

## II.

Once we have decided that the additional uninsured coverage is to be implied in the policy in effect at the time of the accident, we must determine how much additional uninsured motorist coverage is to be read into that policy under subdivision 6(f) for Penn General's failure to offer additional coverage. *See Holman v. All Nation Insurance Co.*, 288 N.W.2d 244 (Minn.1980). This determination is made by examining the mandatory coverage requirements as they existed in 1978 and our analysis in *Holman.*

Under the statutory requirements as they existed in 1978, several types of minimum coverage were required by law in every insurance policy. *See* Minn.Stat. § 65B.49, subds. 1–5. Subdivision 3 required bodily injury liability coverage at a minimum of $25,000/$50,000. Subdivision 4 required uninsured motorist coverage at a minimum of $25,000/50,000.

Offers of several additional coverages were also required to be made under subdivision 6. Subdivision 6(c) required that an additional amount of residual bodily injury liability coverage be offered in excess of that already required under subdivision 3. Subdivision 6(c) established this additional bodily injury coverage at a minimum of $25,000/$50,000. Also, under subdivision 6(f), uninsured motorist coverage "in addition to the minimum limits specified in subdivision 4," was required to be made available. *Id.*, subd. 6(f). The total amount of uninsured motorist coverage required by subdivision 6(f) was that amount "equal to the residual bodily injury liability limits of the policy." *Id.*

We set out in *Holman* the proper calculation of the additional coverages required under subdivision 6 where an insurer has failed to make the mandatory offers of additional coverages. Where the additional coverages under subdivision 6 are not offered, we will "read [those] optional coverages into the * * * policy by operation of law." *Holman*, 288 N.W.2d at 250. The calculation begins with the statutorily prescribed minimum coverage of $25,000/$50,-

000 for bodily injury liability required by subdivision 3. To this amount is added the residual bodily injury liability coverage of $25,000/$50,000 imposed by subdivision 6(c). The sum of these coverages ($50,-000/$100,000) equals the total "residual bodily injury liability limits" referred to in subdivision 6(f) that must be read into the Penn General single limit policy. *See Holman*, 288 N.W.2d at 252.

■ The $50,000/$100,000 split limits imposed under subdivision 3 and 6(c) are the minimum uninsured motorist limits the Penn General policy must meet in order to comply with *Holman* and subdivision 6(f). If the single limit policy purchased by the Lewises from Penn General had met this statutorily imposed minimum, no new coverage would be imposed. However, the policy failed to meet the limits to be imposed and new limits must be set. Although Penn General's current single liability limit of $60,000 is sufficient to comply with the $50,000 imposed limit for injuries per person, it fails to meet the $100,000 imposed limit for total injuries per accident. Where the single limit bodily injury liability coverage in effect at the time of the accident is insufficient to meet the uninsured motorist limits required by Minn.Stat. § 65B.49, subd. 6 and *Holman v. All Na-*

*tion Insurance Co.*, 285 N.W.2d 244 (Minn. 1980), new limits will be read into the policy. We therefore impose by law upon the Penn General policy new uninsured motorist limits of $60,000 per person, $100,000 per accident in order to meet the requirements of Minn.Stat. § 65B.49, subd. 6 (1978).

■ Under the new $60,000/$100,000 limits Mrs. McCallum is entitled to receive $60,000 in uninsured motorist benefits from the involved vehicle.[9] She has already received $64,000 from the funds escrowed by Penn General. Although this amount exceeds the amount Mrs. McCallum is entitled to, she cannot, in equity, be required to refund the additional $4,000 to Penn General or to the Lewises. Mrs. Lewis has received $36,000 from the vehicle involved in the accident and may "stack" the $60,000 in benefits from her other family vehicle under the $60,-000/$100,000 limits.

Affirmed as modified.

9. Mrs. McCallum argues that because this case involves a single insurance policy covering multiple vehicles, she is allowed to stack coverage of both Lewis vehicles. She relies on the Court of Appeals decision in *Boroos v. Roseau Agency, Inc.*, 345 N.W.2d 788 (Minn.App.1984), where the court held that an occupant of an automobile could stack coverages where a single insurance policy covered multiple vehicles. The *Boroos* court distinguished our decision in *Doerner v. State Farm Mutual Automobile Insurance Co.*, 337 N.W.2d 394, 396 (Minn.1983), where we stated:

> [T]he occupants of an insured motor vehicle involved in an accident, who have uninsured motorists coverage solely because of their status as passengers, may not stack the underinsured motorist coverage under a separate policy of insurance purchased by the owner of the involved vehicle for a non-involved vehicle unless they qualify as insureds under that policy.

The *Boroos* court concluded that a single policy covering multiple vehicles presented a different situation than multiple policies covering multi-

ple vehicles. We, however, have recently rejected that analysis. *See Murphy v. Milbank Mutual Ins. Co.*, 388 N.W.2d 732 (Minn., filed 1986). Under *Murphy*, in order for Mrs. McCallum, as a passenger in the Lewis automobile, to be able to stack the coverages of both vehicles, she must demonstrate she is an "insured" under each vehicle. We believe Mrs. McCallum is not an "insured" under the second Lewis vehicle. The Lewises' policy defines an insured as a "covered person" for purposes of uninsured motorist coverage. The only part of this definition Mrs. McCallum could arguably fall within defines a "covered person" as "[a]ny other person *occupying* your covered [automobile]." (Emphasis deleted.) In order for Mrs. McCallum to be a covered person under this definition, she must have been "occupying" a particular vehicle. Because Mrs. McCallum was not "occupying" the Lewises' second automobile at the time of the accident, she is not an insured under that vehicle. Under *Murphy*, she is therefore unable to stack the coverage of the Lewis vehicle not involved in the accident.