Mary Annette WESTENDORF, et al., Respondents,

v.

PENNSYLVANIA GENERAL INSURANCE CO., Appellant.

No. CO–88–1120.

Court of Appeals of Minnesota.

Jan. 31, 1989.
Review Denied April 24, 1989.

John R. Kenefick, Briggs and Morgan, St. Paul, for respondents.

Richard P. Mahoney, Mahoney, Dougherty and Mahoney, Minneapolis, for appellant.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and FLEMING *, JJ.

## OPINION

NIERENGARTEN, Judge.

Pennsylvania General Insurance Company (Penn General) appeals the trial court's judgment, entered pursuant to a directed verdict, reforming respondents' automobile insurance policy to include underinsured motorist (UIM) coverage totalling $500,000 per person and $1,000,000 per occurrence, after stacking.

## FACTS

In early 1978, respondent David Westendorf telephoned an insurance agent and long-time friend of the Westendorfs, to ask him if he could sell the Westendorfs auto insurance. The agent gave his notes of this telephone conversation to an underwriter in his office to determine premiums. The underwriter's file notes indicate she telephoned David Westendorf and quoted him premium rates for various types of coverages, but not for UIM coverage.

Although the underwriter did not specifically recall her conversation with David Westendorf, when asked at trial what she routinely told insureds about the nature of UIM and uninsured motorist (UM) coverages, she answered:

A Uninsured motorist, we would just say if someone is not insured. Underinsured motorist was if someone did not have enough insurance. A lengthy explanation if asked.

Q And would you tell them whether these optional coverages were available for a relatively moderate increase in premium?

A Yes.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Soon after the underwriter's conversation with David Westendorf, an application for an auto insurance policy was prepared and sent to the Westendorfs. The application made no reference to UIM coverage. David Westendorf completed the application and returned it with his check for the premium. The agent subsequently issued a Penn General auto insurance policy effective March 7, 1978, which included residual liability coverage of $250,000 per person/$50,000 per accident, UM coverage of $25,000 per person/$50,000 per accident, but no UIM coverage.

David Westendorf's wife and daughter were subsequently injured when the car in which they were riding collided with another auto. The owner of the other auto had insufficient residual liability coverage to fully compensate the Westendorfs for their injuries; therefore, they sought UIM benefits from their own auto insurer, Penn General. The Westendorfs claimed UIM coverage was implied by law because Penn General, acting through its agent, failed to make a meaningful offer of UIM coverage to David Westendorf.

Penn General denied UIM coverage and the Westendorfs commenced this declaratory judgment action requesting the trial court reform the policy to include UIM coverage. After a day-long jury trial, the Westendorfs moved for a directed verdict, claiming that there was insufficient evidence to show Penn General made a meaningful offer of UIM coverage and that the coverage amount should be equal to their residual liability coverage, which in this case was $500,000 per person and $1,000,-000 per accident after stacking coverages for the two vehicles covered by the policy. The trial court directed a verdict in favor of the Westendorfs and judgment was subsequently entered reforming the insurance policy.

Penn General asserts the trial court erred by (1) refusing to admit parol evidence tending to show the policy may have in fact included UIM coverage; (2) concluding there was insufficient evidence to show Penn General made a meaningful offer of UIM benefits; (3) concluding there was in-

sufficient evidence to show David Westendorf waived his right to receive a meaningful offer of UIM coverage; and (4) concluding the amount of implied UIM coverage was the amount of the Westendorfs' residual liability coverage rather than the statutory minimum amount of residual liability coverage. As to the fourth assignment of error, Penn General requests this court certify this question to the supreme court to resolve an alleged conflict between two of the supreme court's recent decisions involving the amount of UM and UIM coverage implied by law.

## ISSUES

1. Did the trial court err in refusing to admit parole evidence to show the insurance policy may have included UIM coverage?

2. Did the trial court err in concluding the evidence was insufficient to show the insurer made a meaningful offer of UIM coverage?

3. Did the trial court err in concluding the evidence was insufficient to show the insured waived his right to receive a meaningful offer of UIM coverage?

4. Did the trial court err in concluding the amount of UIM coverage implied by law was the amount of the insured's residual liability coverage under the policy?

## ANALYSIS

■ 1. Penn General argues the insurance policy actually does provide UIM coverage of $25,000/50,000 and that the trial court erred in disallowing parole evidence to establish this fact. The question facing the trial court was whether the written policy is a completely integrated agreement between Penn General and Westendorf. If so, evidence designed to supplement the terms of the agreement is inadmissible. Restatement of the Law 2d *Contracts* § 216(1). Determination of whether the agreement is completely integrated is for the trial court. *Taylor v. More*, 195 Minn. 448, 454–55, 263 N.W. 537, 540 (1935), *cited in United Artists Communications, Inc. v. Corporate Property Investors*, 410 N.W. 2d 39, 42 (Minn.Ct.App.1987). In this case,

the written policy itself declares that it embodies all engagements between insured and insurer. A document complete on its face establishes a presumption of completeness. *Taylor*, 195 Minn. at 453, 263 N.W. at 539 (quoting *Thompson v. Libby*, 34 Minn. 374, 377–78, 26 N.W. 1, 2 (1885)). Penn General provided little, if any, evidence to rebut this presumption of completeness. The trial court's decision that the policy was a completely integrated agreement and that parole evidence was inadmissible to contradict or supplement the written terms, was correct.

2. At the time the policy was issued, an insurer or its agent was required to make a meaningful offer of UIM coverage in an amount at least equal to the insured's residual liability limits. Minn.Stat. § 65B.49, subd. 6(e) (Supp.1977); *Kuchenmeister v. Illinois Farmers Insurance Co.*, 310 N.W. 2d 86, 88 (Minn.1981). To be sufficient, the offer of UIM coverage had to satisfy four criteria:

(1) The notification must be in a commercially reasonable manner;

(2) The insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms;

(3) The insurer must advise the insured of the nature of the optional coverage; and

(4) The insured must be told the optional coverages are available for a relatively moderate premium increase.

*Hastings v. United Pacific Insurance Co.*, 318 N.W.2d 849, 851–53 (Minn.1982). The insurer has the burden of establishing it met these four criteria. *Holman v. All Nation Insurance Co.*, 288 N.W.2d 244, 248 (Minn.1980). The trial court found that Penn General did not produce sufficient evidence to satisfy criteria two and three; therefore, it directed a verdict that a meaningful offer of UIM coverage was not made.

A motion for a directed verdict presents a question of law whether the evidence is sufficient to present a fact question for the jury. *Citizen's National Bank of Willmar v. Taylor*, 368 N.W.2d 913, 917 (Minn. 1985). We agree with the trial court that

there was no fact question as to the insurer's failure to meet criteria two and three of *Hastings*.

■ As to the second requirement of *Hastings*, there is no evidence that the underwriter told Westendorf that he could have UIM coverage up to the amount of his residual liability limits. As to the third requirement of explaining the nature of UIM coverage, the underwriter's routine was to explain simply what "UIM was if someone did not have enough insurance." This statement is insufficient to inform an insured of the nature of UIM coverage.

■ 3. Penn General asserts that David Westendorf somehow waived his right to be given a meaningful offer of UIM coverage. Waiver is a voluntary relinquishment of a known right. Both intent and knowledge, either actual or constructive, are essential elements. *Anda Construction Co. v. First Federal Savings & Loan Ass'n*, 349 N.W.2d 275, 278 (Minn.Ct.App.1983), *pet. for rev. denied* (Minn. Sept. 5, 1984). There is absolutely no evidence of any intent on the part of Westendorf to waive his right to be offered UIM coverage. The underwriter did not even recall her conversations with Westendorf. The trial court correctly directed a verdict of non-waiver. *See Taylor*, 368 N.W.2d at 917.

4. Finally, Penn General contends that the amount of implied UIM coverage was the statutory minimum amount of residual liability coverage rather than Westendorf's residual liability coverage. The insurer must offer UIM coverage "in an amount at least equal to the insured's residual liability limits and also at lower limits which the insured may select * * *." Minn.Stat. § 65B.49, subd. 6(e). While Penn General concedes the Minnesota Supreme Court has held that when the insurer fails to make this offer, UIM coverage is implied in the amount of the insured's residual liability limits contained in his policy, *see Osterdyke v. State Farm Mutual Automobile Insurance Co.*, 420 N.W.2d 900, 903 (Minn.1988), Penn General argues that *Osterdyke* conflicts with the supreme court's decision in *Lewis v. Pennsylvania General Insurance Co.*, 391 N.W.2d 785 (Minn.1986). Penn General asserts that *Lewis* stands for the proposition that where no optional UM or

UIM coverage is offered, the amount imposed by law should be the statutory minimum UM or UIM coverage.

In *Lewis*, the insureds had single limit residual liability coverage of $60,000 and single limit UM coverage of $50,000. No optional additional residual bodily liability or UM coverage had been offered pursuant to Minn.Stat. § 65B.49, subds. 6(c) and 6(f), respectively. The issue was how much additional UM coverage, if any, should be implied by law. After a lengthy analysis which need not be repeated here, the court concluded that the minimum UM coverage implied by law was $50,000 per person/$100,000 per accident where no offer of additional coverages under subdivisions 6(c) and 6(f) was made.

However, the court went on to hold that the insureds had implied coverage of $60,000 per person because that was the amount of the policy's per person residual liability coverage, and $100,000 per occurrence because the $60,000 per occurrence in the policy was insufficient to meet the statutory minimum of $100,000.

■ Consequently, *Lewis* merely requires the statutory minimum amounts be implied only where the policy's residual liability limits are less than the statutory minimum amounts. Where, as here, the policy's residual liability limits exceed the statutory minimum implied UIM coverage, the UIM coverage implied by law will be equal to the policy's residual liability limits. *Osterdyke*, 420 N.W.2d at 903.

*Lewis*, therefore, is not in conflict with *Osterdyke*. Lewis establishes the lower limit for implied coverage; *Osterdyke* establishes the upper limit. Certification of this issue to the supreme court on the claimed conflict of supreme court decisions on this issue is thus unnecessary.

### DECISION

The trial court's decision is affirmed in all respects.

AFFIRMED.