**LIBERTY MUTUAL INSURANCE COMPANY, Respondent,**

v.

**Walter CROW, Appellant.**

**No. C0-89-1709.**

Court of Appeals of Minnesota.

Feb. 27, 1990.

Michael S. Kreidler, Stich, Angell, Kreidler & Muth, Minneapolis, for respondent.

Sharon L. Van Dyck, Schwebel, Goetz & Sieben, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and GARDEBRING and FLEMING,* JJ.

## OPINION

CRIPPEN, Judge.

Appellant Walter Crow was entitled to uninsured motorist coverage benefits under a policy issued by Northwestern National Insurance Company covering 791 vehicles owned by 3M, Crow's employer. The trial court concluded respondent Liberty Mutual, Crow's personal insurer, provided secondary coverage which offered no benefits until Crow's injuries exceeded Northwestern's stated policy limits of $25,000 multiplied by the 791 3M vehicles. We affirm.

## FACTS

Appellant Walter Crow was severely injured when his vehicle collided with one driven by an uninsured person. At the time of the accident, Crow was driving a vehicle furnished by 3M. The policy of 3M's insurer, Northwestern National, contained this limit of liability for uninsured motorist coverage:

> Regardless of the number of insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident

is the limit of UNINSURED MOTORIST INSURANCE shown in the declarations. If there is more than one covered auto, our limit of liability for any one accident is the sum of the limits applicable to each covered auto.

Northwestern commenced a declaratory judgment action against Crow to determine the amount of coverage available to Crow under the policy. That suit produced a judgment that the policy provide uninsured motorist coverage for 791 covered automobiles garaged in the State of Minnesota, that the policy stated a $25,000 limit on this benefit per covered automobile, and that the endorsement on liability limits gave appellant coverage of $19,775,000 for his injuries.

Northwestern and 3M appealed this judgment. Following oral arguments, but before an opinion was issued, Crow and Northwestern reached a settlement, and the appeal was dismissed. Northwestern agreed to pay Crow $800,000.

At the time of the accident, appellant was insured under a policy issued by respondent Liberty Mutual to Lois Crow, appellant's wife. The policy covered three owned vehicles.

Appellant made a demand on respondent for $105,000 in uninsured motorist coverage, and respondent commenced this action for a determination that appellant is entitled to recover uninsured motorist benefits from respondent only to the extent that the damages he sustained in the accident exceed $19,775,000. The trial court determined that respondent's coverage is secondary to the entire "formula limit" of the Northwestern policy and granted respondent's motion for summary judgment. The trial court also rejected appellant's argument that respondent must at least pay any damages that exceed $800,000, the amount of appellant's settlement with Northwestern; the court concluded that respondent was not a party to the settlement and the settlement worked to its prejudice.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## ISSUES

1. Did the trial court err in determining that the total amount of uninsured motorist coverage available to appellant pursuant to the Northwestern policy is primary to any uninsured motorist coverage provided by Liberty Mutual?

2. Did the trial court err in determining that appellant is collaterally estopped from claiming coverage under the Northwestern policy in an amount less than $19,775,000?

## ANALYSIS

The essential facts of this litigation are not in dispute. Because the trial court's determination was solely one of law, it does not bind this court. *See A.J. Chromy Const. Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn. 1977).

*Priority of Coverage*

The parties do not dispute the trial court's determination in the first lawsuit. Both Crow and Liberty Mutual agree that Northwestern was exposed to $19,775,000 in uninsured motorist coverage. The parties do not agree on the priority of coverage involved.

■ Minnesota follows the "closeness to the risk" doctrine in determining which insurance policy applies in what order. *See Integrity Mut. Ins. Co. v. State Auto. and Casualty Underwriters Ins. Co.,* 307 Minn. 173, 239 N.W.2d 445 (1976). This approach allocates coverage "in light of the total policy insuring intent, as determined by the primary policy risks upon which each policy's premiums were based and as determined by the primary function of each policy." *Id.* at 175, 239 N.W.2d at 446.

Appellant, relying on application of stacked benefits in *Integrity Mutual,* contends that the correct priority of the policies is: first, the $25,000 from the Northwestern policy covering the vehicle Crow was driving at the time of the accident; second, the insurance issued to Crow and

his wife by Liberty Mutual; and third, the remaining coverage from the Northwestern policy on other 3M cars. Respondent, relying on *Boroos v. Roseau Agency, Inc.,* 345 N.W.2d 788 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Dec. 24, 1984), contends the entire Northwestern policy is primary and the Liberty Mutual policies are secondary.

■ In *Boroos,* as in the present case, judicial stacking of multiple policies was not at issue. Judicial stacking is a recognition of total benefits for separate coverage purchased separately. *See Yeager v. Auto–Owners Ins. Co.,* 335 N.W.2d 733, 736–38 (Minn.1983). The present case involves multiplication of uninsured motorist coverage as defined by the coverage limits in the policy which is primarily applicable.

The language of the Northwestern policy has been construed twice. In *Rusthoven v. Commercial Standard Insurance Co.,* 387 N.W.2d 642, 644 n. 1 (Minn.1986), the Minnesota Supreme Court stated that the language of the Northwestern policy establishes a single policy limit, and " * * * there is no necessity to resort to the stacking principle." *See also Rusthoven v. Commercial Standard Ins. Co.,* 363 N.W.2d 496, 499 (Minn.Ct.App.1985) (Sedgwick, J., dissenting).

In *Boroos,* this court determined that multiplication was required by the same policy language used by Northwestern. Where the policy provided primary coverage, the total multiplied benefits were applicable as primary coverage, unlike the result in stacking cases under *Integrity Mutual. Boroos,* 345 N.W.2d at 791.[1]

Appellant contends *Boroos* controls only if, as in that case, the claimant's personal coverage of a claimant includes uninsured motorist coverage by operation of law, rather than by an express purchase. *Boroos* relied on deference to "the 'total policy insuring intent' of the *policies." Boroos,* 345 N.W.2d at 791 (emphasis added). However, *Boroos* made no reference to the

---

1. In *Murphy v. Milbank Mutual Insurance Co.,* 388 N.W.2d 732, 738 (Minn.1986), the supreme court corrected the *Boroos* court's observation on the significance of coverage under a single policy. The *Murphy* court did not comment on the policy language interpretation used in *Boroos,* nor did it question this court's decision that the entire multiplied coverage was primary.

significance of alternate coverage by operation of law, and we see no basis for inferring such significance. Although no premium is paid for uninsured motorist coverage which exists by operation of law, its benefits are equally as extensive as if under purchased coverage. Significantly, the insuring intent given singular attention by the *Boroos* court was in the policy providing for multiplication of benefits.

■ In *Boroos*, this court found the policy language to be ambiguous. *Id.* at 790. The trial court in the present case found the language involved to be *un*ambiguous. Accordingly, appellant argues, *Boroos* cannot be applied to the policy language involved in the present case. Whether the language used is ambiguous or not, its judicial meaning is settled: the policy language provides for multiplication of benefits, and the entire coverage is primary when the policy covers the involved vehicle.

The trial court in the present case stated that this case was actually decided when the judge in the earlier action found there was a $19,775,000 formula limit on the Northwestern policy. On appeal, Crow and Liberty Mutual continue to debate whether this finding is conclusive on the question of primary coverage. The first court did not address the question of primary coverage, since the question was not before it.

The trial court cited *Boroos* in its memorandum and properly attributed importance to the earlier decision on the Northwestern policy. Given the single formula limit in the policy, it followed as a matter of law under *Boroos* that the entire formula limit is primary. The trial court's ultimate decision was correct: once the determination of a single formula limit was accepted, there was nothing left to decide.

*Amount of Set Off*

■ Liberty Mutual argues that Crow is collaterally estopped from denying that he is entitled to uninsured motorist benefits from Northwestern in excess of his $800,-000 settlement with that insurer. Where a plaintiff settles with a defendant who may be liable for the plaintiff's damages, the settlement cannot be done to the prejudice of the remaining nonsettling defendants.

*Eckblad v. Farm Bureau Mut. Ins. Co.*, 371 N.W.2d 78, 81 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Sept. 26, 1985).

Crow observes *Eckblad* involved a $150,-000 settlement where the insurer's undisputed liability was $650,000. *Id.* at 81. Here, Northwestern disputed its liability, claiming it provided only $25,000 in coverage. Nevertheless, *Eckblad* governs this case: Liberty Mutual was not a party to the settlement; under *Boroos* and *Rusthoven*, Northwestern's exposure was well-established; and the settlement prejudices Liberty Mutual. Under *Eckblad*, Liberty Mutual's uninsured motorist coverage does not become available to Crow until Crow's damages exceed Northwestern's coverage.

## DECISION

The Northwestern policy provided a formula limit of $19,775,000. The entire amount of the Northwestern policy's formula limit, not the amount of Crow's settlement with Northwestern, is primary to Crow's personal uninsured motorist coverage.

Affirmed.